## AMY & Another *v.* SHELBY COUNTY TAXING DISTRICT & Others.

IN ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

Submitted January 8, 1885.—Decided April 13, 1885.

When a person owing taxes to a municipal corporation becomes the owner of obligations of the municipality which are by law receivable in payment of its taxes, the extinguishment of the tax and the debt is clearly within the doctrine of set-off of mutual obligations.

A State law authorizing a debtor of a municipality to procure the obligations of the municipality and use them as a set-off for his own debt, is not liable to constitutional objection as divesting creditors of the municipality of vested rights, or as impairing the obligation of contracts.

The act of the Legislature of Tennessee of March 23, 1883, authorizing municipal corporations and taxing districts to compromise their debts by the issue of new bonds at the rate of fifty per cent. of the principal and past due interest, and providing that the acceptance of the compromise shall work a transfer of the creditor's debt with a right to the municipality or district to enforce it : and the act of the same date providing that such new bonds and their matured coupons shall be received in payment of back taxes at the same rate as the bonds known as the Flippin bonds, did not divest the holders of unpreferred debts of the city of Memphis of any rights conferred upon them by the previous legislation set forth or referred to in *Meriwether* v. *Garrett*, 102 U. S. 472 ; and violated no provision of the Constitution of the United States in those respects

This was a bill in equity filed in a State Court of Tennessee by the plaintiffs in error as plaintiffs below to have rights secured to them which were alleged to be invaded by legislation of that State referred to in the opinion of the court. A decree was rendered dismissing the bill, which decree was affirmed by the Supreme Court on appeal. The plaintiff below sued out this writ of error to review the latter judgment. The facts which make the federal question are stated in the opinion of the court.

*Mr. William M. Randolph* for plaintiffs in error.

*Mr. S. P. Walker* for the Taxing District of Shelby County.

*Mr. Lawrence Lamb* for defendants in error.

Mr. Justice Miller delivered the opinion of the court.

This is a writ of error to the Supreme Court of Tennessee.

By an act of the Legislature of the State of Tennessee, approved January 29, 1879, the charter of the city of Memphis was repealed ; and by another act, approved the same day, the territory which had constituted the city was created a taxing district, and the property of the city and all debts due to it and all uncollected taxes were vested in the State.

On March 13 of the same year another statute, familiarly called chapter 92, directed the appointment of an officer for each of the corporations, whose charter was repealed by the earlier statute, to be called the receiver of back taxes, who

was to be under the control of a Court of Chancery in the collection and paying out of the taxes so collected by him. Section 2 of this act directs that: "He shall distinguish in making such payments the respective sources from which the moneys' paid in are derived, showing what is collected from taxes for general purposes and what for taxes for special purposes, designating the particular or special purpose, so that the same may be kept separate in the State treasury, in order that the treasurer may pay the same according to any lien, priority, or equity, if any, which may be declared by the Chancery Court, touching any of said funds, in favor of any creditor or class of creditors." Another section authorizes the receiver of back taxes to file a bill in chancery, in the name of the State, in behalf of all creditors, against all delinquent tax-payers, for the ascertainment and enforcement of the rights of the parties in regard to these back taxes unpaid.

Such a bill was filed and important proceedings have been had under it.

A bill was pending, however, in the Circuit Court of the United States before the bill authorized by this statute was filed, which sought to enforce the collection of taxes by certain parties, to which the receiver of back taxes was afterwards made a defendant; and under that bill a decree was rendered which treated the main provisions of this State legislation as void. On appeal from that decree this court reversed it, and announced certain principles which upheld the validity of the legislation of the State, but maintained the power of courts of the United States to enforce against the receiver, and in his hands, any decree or judgment by mandamus for levying and collecting taxes which had been made by such court prior to the beginning of this legislation.

The case, a report of which contains the history of this legislation and the statutes above referred to, is that of *Meriwether v. Garrett,* 102 U. S. 472.

Section 5 of the act last mentioned provided with some particularity for the receipt by the back-tax collector, in payment of these back taxes, of certain classes of outstanding indebtedness of the city of Memphis, and fixed the rate, not a

ways the same, at which they might be received, chiefly at the
rate of fifty cents on payment of taxes for each dollar of
indebtedness.

The collection of these taxes and their distribution continued
under the supervision of the Court of Chancery in the suit
already mentioned, and many orders and decrees on the subject
were made.

The State in the meantime passed statutes which authorized
the taxing district to compromise the indebtedness of the city
of Memphis, by taking up its old obligations and issuing bonds
of the taxing district at the rate of fifty cents of the latter for
one dollar of the former.

The two statutes on this subject, which are supposed to vio-
late the Constitution of the United States, were passed March
23, 1883.

One of these acts, ch. 170, of the acts of that year, author-
izes all municipal corporations and taxing districts to compro-
mise and settle their debts, and to issue the bonds and coupons
of taxing districts at the rate of fifty per cent. of the prin-
cipal and past due interest; and a section of the act is as fol-
lows:

"§ 16. *Be it further enacted*, That the acceptance and con-
summation by any creditor of the compromise provided by
this act shall of itself operate to assign and transfer to said
municipal corporation or taxing district all his rights to and
claims against the uncollected taxes or other assets whatever
of said municipal corporation, with the right in said municipal
corporation or taxing district to enforce the same, either in its
own name or in the name of the creditor ; the funds that may
be realized therefrom to be paid into the designated depository
of such municipality or taxing district ; and they are hereby
devoted and appropriated exclusively to the payment of the
bonds and coupons that come under the provisions of this
act."

The other statute passed the same day is an act modifying
the provision of ch. 92, March 13, 1879, as to what shall be
received in payment of back taxes, and the rate at which the
various items of debt should be received. One of these changes,

made in evident relation to the act passed the same day for refunding this old indebtedness by bonds of the taxing district, is in these words : " *And provided further,* That when any indebtedness of such extinct municipality shall be hereafter funded into new bonds at fifty cents on the dollar, such new bonds and matured coupons thereon shall be received in payment of the back taxes due such extinct municipality at the same rate as herein provided for Flippin compromise bonds." The Flippin compromise bonds were to be received at double their face value.

The obvious reason for this was that both the Flippin compromise bonds and the bonds to be issued under the new act just passed, represented two dollars of old debt for one dollar on the face of the new bonds; and this new regulation was making all old indebtedness receivable at par. It was necessary, therefore, in order to place the holders of Flippin bonds who had compromised this old debt for fifty cents on the dollar, and those who might do the same under the new statute just passed at the same rate, on an equality with those who still held the old debt unchanged, to make this difference in the rate at which they might be received for back taxes.

It is the decree of the Supreme Court of Tennessee holding this legislation valid which is assigned for error, and the principal error in the case.

The plaintiffs in error are parties who held and still hold debts against the City of Memphis, which were not secured by a lien or claim on any tax specially assessed for their payment. Their debts belonged to the unpreferred class. While a large part of the debt of the city during the time between the first and latest enactments we have mentioned was satisfied by using it in payment of back taxes at the rate of two dollars for one, or by exchanging it for the new bonds of the taxing district, the parties now complaining did neither, but still held their old bonds with accumulated interest. It is to be observed, also, that the special taxes assessed under writs of mandamus to pay judgments prior to the repealing law could only be paid in money, and as fast as it was paid it was appropriated to the payment of the debts for which it was specifically

assessed. And so also of all taxes assessed for any special purpose.

One result of this process was that the back taxes were gradually being paid and satisfied by exchange for this old indebtedness, whereby the holders of it, who sold it to tax-payers to be used for that purpose, were getting something for it, and both the indebtedness and the back taxes were being extinguished by a process of set-off. For, when a tax debtor became by purchase an owner of any part of this debt, the extinguishment of the tax and the debt was clearly within' the doctrine of set-off of mutual obligations.

When, however, the back-tax receiver began to receive in payment, under the law of 1883, the new bonds of the taxing district, issued in compromise of the old indebtedness, these plaintiffs in error insisted that this could not be done to their prejudice; and by a petition to the Chancery Court they prayed its interference to prevent it. As the language of the statute was plain, they insisted that it was void, because forbidden by the Constitution of the United States. The Supreme Court of the State held the law to be valid, and hence this writ of error.

The assignment of errors in plaintiffs' brief points out no special provision of the Constitution which forbids the legislation of Tennessee complained of, which, it is to be remembered, is only the more recent statutes we have referred to.

The language of the brief, as repeated in several forms, is, that the court erred because it did not hold that these statutes, as construed by the court, were a violation of the Constitution of the United States, and divested the rights of plaintiffs as set out in their petition.

This expression, when the argument in its support is examined, resolves itself into the proposition that chapter 92 of the acts of 1879 conferred on them some right, which they insist became a vested right, of which right they have been deprived by the later act.

But we do not see what right was vested in them by that statute. It is to be remembered that *their* debts did not belong to any class which at the time the statute was passed consti-

tuted a lien on any part of these back taxes. Such liens as did exist, or such vested rights in any special class of taxes as then existed, were carefully preserved by the statute, and these taxes could only by its terms be collected in money, and used to discharge these liens or special claims. It gave no lien of the general debtor on the back taxes, or any part of them. It provided for their collection, and for their use when collected, in payment of the debts of the city. In this respect it did not change any existing law, but provided the means of enforcing the rights of the creditors of the city against its assets.

The legislature having assumed charge of the property of the defunct corporation, and undertaken to administer its assets, passed judicious laws for this purpose, and it is not asserted that the original act which allowed the use of the debt of the city in payment of the taxes was unjust, though it required two dollars of the former in satisfaction of one of the latter. All holders of the general city debt were placed on equality in this respect. Plaintiffs here could have used their debt or disposed of it in that manner as others did. The State did not come under any obligation to pay their debt, except as it could' be paid in this manner, and it did not guarantee that the back taxes, whether paid in this manner or in any other, would give it a fund sufficient to pay all back indebtedness. It only undertook to do the best it could with the means it had.

The legal and equitable right in a general way of a debtor to procure the obligations of his creditor and use them as a set-off for his own debt, will hardly be denied when the law of the State authorizes it, and such a law can be liable to no impeachment as divesting vested rights or impairing the obligation of contracts. *Blount* v. *Windley*, 95 U. S. 173. Both the original act, ch. 92, and the two acts of 1883, did this. The fact that the later acts made a change in the rate at which this set-off should be allowed did no injustice to plaintiffs, but rather favored them, since it permitted their debt, with its accumulated interest, to be set off, dollar for dollar, whereas this could only be done before at two dollars for one. It did them no injustice, and violated no right of theirs, nor any contract of theirs, that the new bonds exchanged for old indebtedness

should be receivable for back taxes at the same rate that the old indebtedness would have been received if no exchange had been made.

We see no vested right of plaintiffs which is violated by the decree, no contract of theirs impaired by the legislation complained of, and no injustice done them, and especially none which this court can remedy.

The decree of the Supreme Court of Tennessee is, therefore,

*Affirmed.*