## CRUMMER et al. v. CITY OF FORT PIERCE et al. (GEORGIA BOND & MORTGAGE CO., Intervener).

District Court, S. D. Florida.

Aug. 1, 1932.

Giles J. Patterson, of Jacksonville, Fla., for complainants.

L'Engle & Shands, of Jacksonville, Fla., for intervener.

Nottingham & Denison, of Fort Pierce, Fla., for defendants.

Before BRYAN and SIBLEY, Circuit Judges, and RITTER, District Judge.

BRYAN, Circuit Judge.

This is a suit brought and joined in by owners of bonds of the city of Fort Pierce, Fla., to enjoin that city from accepting such of its bonds and interest coupons as have matured in payment of taxes levied by it for the special purpose of retiring its bonded indebtedness as the same falls due.

It comes before us on an application for interlocutory injunction, pursuant to 28 US CA § 380. In support of that application, it is contended that the city is without authority to accept anything except money in the payment of the taxes involved, and that a state statute, chapter 15810, enacted in 1931 (Sp. Acts), after the bonds were issued, which purports to empower the city to accept settlement of its taxes in the manner complained of, is unconstitutional, in that it attempts to impair the obligation of a contract and deprives complainants of their property without due process of law, in violation of section 10 of article 1, and the Fourteenth Amendment of the Constitution of the United States, as well as of similar provisions of the Constitution of Florida (Declaration of Rights, §§ 17, 12).

According to averments of the bills of complaint, which, not having been denied, are accepted for purposes of this hearing as true, complainants are residents of states other than Florida, own no property subject to taxation by the city, but severally own bonds of the city aggregating $459,000. The bonds held by each of at least two of the complainants exceed in value the amount necessary to confer jurisdiction on this court. The city has outstanding $3,500,000 of bonds, including those held by complainants. It has been in default for two years, and now owes $400,000 principal and interest past due. It has little or no money with which to pay the amount now in default, and its levy on account of its bonded indebtedness for the current year will not raise enough revenue to pay even current interest on its bonds; and so the prospect is that the amount in default, instead of being paid off or reduced, will become greater with the passage of time. To make a bad situation worse, the city has been accepting, and, unless enjoined, will continue to accept, bonds and coupons in payment of taxes. All the bonds and coupons of the city, including those held by complainants, were issued prior to the year 1931, and were payable in money only. Chapter 15810, enacted in 1931 (Sp. Acts), purports to make the city's outstanding bonds and matured interest coupons, in lieu of money, receivable in payment of taxes for debt-service purposes. The combined effect of the statute, of compliance with it, and of the city's default upon its bonded indebtedness, has been to depre-

ciate the market value of the bonds and coupons to such an extent that they are being bought for about 20 per cent. of their face value, and are being turned in to the city by landowners at face value in payment of taxes. Complainants, as well as all other bondholders who are not also taxpayers, are prejudiced and discriminated against because they will be compelled either to sell their bonds and coupons at their greatly depreciated market value or to hold them without any reasonable expectation of having them paid off so long as other bonds or coupons are available for payment of taxes.

In our opinion it is true, as alleged by the complainants, that the bonds when issued were required by law to be paid off only in money. The city charter simply authorized the city to issue bonds for public improvements, and the form of warrant authorized to be issued to the tax collector clearly implied that only money could be accepted in payment. In the absence of special permission to discharge its bonded debt otherwise, the city was bound to pay in lawful money. Frier v. State, 11 Fla. 300; Finnegan v. City of Fernandina, 15 Fla. 379, 21 Am. Rep. 292. It is manifest that the city's bonded indebtedness would not be paid in money if the taxes could be discharged in bonds and coupons. Undoubtedly the statute of 1931, if valid, would change the city's obligation under its contract; and we entertain no doubt that it would also impair that obligation. The bondholders, being entitled under their contract to be paid in money, cannot be postponed in their rights until all bonds except theirs have been retired by being used in payment of taxes. As long as taxes can be paid with depreciated bonds, it cannot reasonably be expected that the city will collect any substantial amount of money with which to retire matured bonds and coupons. As a general rule, city bonds cannot be used as a set-off against city taxes. Finnegan v. City of Fernandina, supra. Of course, the right of set-off exists where the law permits it and the contracting parties agree.

To sustain the Special Act of 1931, the city relies principally on Amy v. Shelby County Taxing District, 114 U. S. 387, 5 S. Ct. 895, 29 L. Ed. 172, but that case is not in point here, since the city of Memphis, which issued the bonds, had been abolished, and there was no obligation upon the Legislature of Tennessee to provide for their payment. The relief granted by the Legislature was a pure gratuity; there was no obligation of a contract to be impaired. Other decisions relied on by the city are equally inapplicable to the facts of this case.

An interlocutory injunction will issue as prayed for by the complainants.