**HARRIS et al. v. CITY OF MIAMI, FLA., et al.**

**No. 1119–M.**

District Court, S. D. Florida.

Aug. 18, 1932.

Shutts & Bowen, of Miami, Fla., for complainants.

John W. Watson, Jr., Mitchell D. Price, and Charles W. Zaring, all of Miami, Fla., for defendants.

RITTER, District Judge.

This matter comes on for hearing upon the application of the plaintiffs for a temporary injunction. The matter has been heard upon the verified bill of complaint and answer, with numerous exhibits and affidavits.

The plaintiffs allege that they are the owners and holders of $6,972,000 worth of bonds of the defendant city; that said bonds are general obligations of the defendant, and were issued and sold to provide money for the payment of public improvements in said city; that the defendant did create special assessment districts and levy special assessments against the property in such districts to raise money to pay the principal and interest of these bonds, and did especially pledge all such money to such payment; that each bond contains the provision: "Both principal and interest of this bond are payable in gold coin of the United States * * * For the prompt payment hereof and the interest hereon as the same shall fall due, the full faith and credit and resources of said city are hereby irrevocably pledged." That on the 23d of July, 1932, the defendant, by Resolution No. 7569, authorized the Director of Finances, Alvin E. Fuller, a defendant, to accept "any and all City of Miami bonds outstanding in payment of all delinquent taxes for which the said city owns the certificates, up to and including the year 1929; and is further authorized and directed to accept such bonds in payment of all special assessments, the principal amount of such bonds and the coupons to be accepted at par value and applied against principal and interest of such taxes and/or special assessments at par." Such bonds were further directed to be canceled. The defendant is

accepting, under said resolution, bonds in payment of special assessments, and the taxpayers' property is being released from the assessment; that the city has not levied a general tax which, together with the special assessment fund, is adequate to pay the principal and interest of bonds, there being now due and unpaid as defendants admit of principal on bonds $2,394,000, and interest in the sum of $271,412.50; that the action of the city in so doing is unlawful, will irreparably injure the plaintiffs in the collection of their bonds by indefinitely deferring payment; that they have a beneficial interest in the special assessment fund, as the same is pledged for the payment of the bonds.

The defendant admits all of these material facts, but deny that the resolution is invalid, or that they are acting unlawfully, and deny any interest of the bondholders in the special assessment fund, asserting that that is a fund which exists by initiation of the city for its own convenience, and is not in any way subject to equitable jurisdiction at the behest of the plaintiffs. They assert they will continue to accept bonds in such manner unless restrained by this court.

From the exhibits, it is clear that in each special assessment district, the fund arising therefrom has been by action of the defendant city, pursuant to the direction of the charter of the city, specifically set aside by ordinances or resolutions for the sole purpose of paying the principal and interest of the respective bond issues set up in the bill. The answer states that the city of Miami does not have at this time sufficient funds with which to pay either the principal or interest of past-due bonds, or the interest represented by past-due coupons, and states that all of the said special assessments are assets of the city and owing to it.

The first question presented is: From what sources are the bonds to be paid? The pledge in the bond is faith, credit, and resources of the city. The resources are twofold. One is by general levy of an ad valorem tax; the other is by the fund arising from the collection of special assessments. These two are conjoined. They supplement each other. The charter of the city of Miami, section 56, subparagraph X, creates a fund into which shall be paid collections from general tax levy for principal and interest, and special assessments collections, and provides: "That the amount of the annual tax levy herein required may be re-duced in any year by the amount then contained in said fund, it being the intention hereof to provide that such bonds shall be payable by general taxation, as other bonds of the city, but that the additional security provided herein by way of special assessments will reduce the amount of such general taxation."

In City of Sanford v. Dial, 104 Fla. 1, 142 So. 233, 238, the Supreme Court of Florida has said: "Where bonds of the city issued for improvements are direct obligations of the city, the special assessment liens held by the city for such improvements are in the nature additional resources for the payment of the bonds."

Section 3033, C. G. L. Florida 1927, under the Cities and Towns Act, provides: "All special assessments * * * shall constitute a fund for the payment of the principal and interest of the bonds authorized."

Commenting on this, the Supreme Court of Florida, in Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 909, 70 A. L. R. 156, says: "In view of the fact that so many and various factors and combinations of elements enter into and control the disposition of cases affecting the liability of a municipality for local improvement, we think the ultimate test of the power must be extracted from the statute or contract authorizing the improvement. An examination of the statute as above quoted discloses that the city is the sole and only primary obligor to the bondholder, that there is no ground whatever to assume that the special assessments imposed constitute the only fund for the discharge of the said bonds, and that the bondholder is not concerned with the source or means exercised by the city for raising funds to pay its bonds."

The word "fund," as defined by the dictionaries, means "money" which is gathered for or to be appropriated to a specific object. It cannot mean bonds or anything else except cash. The special assessment "fund" is, therefore, a resource pledged to bond payment.

Judges Bryan and Sibley, of the Circuit Court of Appeals, and myself, as a three-judge court, recently in the case of Crummer et al. v. City of Fort Pierce (D. C.) 2 F. Supp. 737, had occasion to consider the constitutionality of chapter 15810 of the Laws of Florida enacted in 1931, which purports to give the city the power to receive outstanding bonds and matured interest coupons in lieu of money receivable in payment of

taxes for debt service purposes. We therein held this law unconstitutional by granting an interlocutory injunction against the city of Fort Pierce, for the reason that taxes must be paid in money and the city could only discharge its bonded debt in lawful money, under the contractual relations governing the issue.

The ordinance in question of the city of Miami was passed pursuant to that state law. If the state law is unconstitutional, this ordinance must be held void. This leaves the city without any authority to do what it is charged with doing in this case. The plaintiffs are entitled to have the special assessment fund preserved as a resource pledged to the payment of the bonds, which are payable in gold coin. The contract and statutes at the time the bonds were issued provided for money payment and collection of special assessments in money. The ordinance in question and the action of the city is an impairment of the contractual relations of the bondholders. The bondholders, being entitled under their contract to payment in money, cannot be postponed in their rights until all bonds except theirs have been retired by being used in payment of taxes. As long as taxes can be paid with depreciated bonds, it cannot reasonably be expected that the city will collect any substantial amount of money with which to retire matured bonds and coupons. As a general rule, city bonds cannot be used as a set-off against city taxes unless the law permits and the contracting parties consent. By the method being pursued, a bondholding taxpayer is preferred over non-taxpayers holding bonds in the payment of his bond. He received payment in full by the method prescribed, whereas the non-taxpaying bondholders must take the depreciated market price. A contractual equality is thus destroyed. Special assessments are to be classified as taxes. They differ in many respects from general taxes for city, county, and state purposes, but the principle presented in this case knows no distinction.

I cannot consider the assertions of the defendant that what is being done benefits the city by reducing its outstanding bonds and enhances the value of the market price of bonds by creating a demand. The practical and economical aspects of the situation are not before me. The law governing the rights of the parties is all that is here involved.

The defendant objects to the temporary injunction on the ground that the plaintiffs are not the owners of the bonds, alleging that the plaintiffs constitute a bondholders' committee employed by the city to facilitate the exchange of refunding bonds; that they are agents or trustees for the city and are not the real parties in interest. There is thus presented a question of fact which must be determined upon final hearing. The plaintiffs claim legal title under contract, and appear to be clothed with authority to protect bondholders' rights. Enough appears in the pleadings and documents presented to warrant a presumption for the purpose of this hearing that they are the legal owners and holders of the bonds, as alleged. I do not consider this objection of such major importance at this time as to halt my action, nor is the objection that the bill does not allege insolvency serious. It is not a question of whether the city is insolvent, but a situation is presented where it makes payment indefinite and uncertain by destroying a resource of payment. The plaintiffs are entitled to a temporary injunction.

I have stated my view of the law in more detail than is necessary upon a motion for temporary injunction. I have done so purposely, so that parties may be advised of what holding I shall make upon final hearing in that respect. If the question of fact above stated must be determined upon final hearing, of course this can be done. Even if the plaintiffs are not the proper persons to sue, the city cannot escape a suit involving the questions herein, as some other bondholder will undoubtedly promptly institute action. I hope technicalities may be waived by both sides, a final decree entered, and the matter prosecuted on appeal so that the law's delay will be eliminated.

A temporary injunction will be granted effective this day.