**NORFOLK & W. RY. CO. v. BOYLE, County Treasurer.**

No. 5176.

District Court, N. D. Ohio, E. D.

July 2, 1935.

Sanders & Dempsey, Thomas M. Kirby, and Robert F. Denison, all of Cleveland, Ohio, and Blanchard, Touvelle & Nida, and Jack E. Nida, all of Columbus, Ohio, for plaintiff.

Frank T. Cullitan, Pros. Atty., and Neil W. McGill, Asst. Pros. Atty., both of Cleveland, Ohio, for defendant.

JONES, District Judge.

A preliminary injunction was granted the complainant on March 25, 1935, and the matter is now before the court on the merits and for consideration of the question of making the injunctive order permanent. The case has been submitted on the pleadings, written and oral stipulations of facts, exhibits, affidavits, and briefs.

The complainant is the owner of $114,001.87 of special assessment bonds legally authorized and issued by the city of Parma, Ohio, under the Uniform Bond Act, section 2293-24, and sections 3892, 2646 and 2744, Code of Ohio. These bonds are now in default in the principal amount of $23,001.87. Interest payments also are in default since October 1, 1934. The city of Parma now has outstanding a total aggregate amount of $4,167,562.87 of bonds issued in anticipation of the collection of special assessments which were levied prior to the issuance of the several series of special assessment bonds aggregating said amount, and all of such bonds recite or indicate on their face that they are issued in anticipation of the collection of certain special assessments levied against the benefited properties. Past-due and unpaid special assessment bonds amount to $1,104,008.

On March 15, 1935, a law was passed by the General Assembly of Ohio authorizing the acceptance by taxing subdivisions of special assessment bonds, issued under authority of section 2293-24 of the General Code, in payment of special assessment taxes (sections 2652-6 and 2652-7). By this law, it was provided that special assessment bonds could be acquired and used by payers of special assessment taxes for the payment of their special assessment taxes at the full face value of the bonds, not only for the discharge of past-due assessments, but also for current or future assessments plus any penalties or interest accrued at the time of such payment. The county treasurer was authorized to accept such bonds in payment of special assessment taxes at the full face of the bonds. Complainant charges that this law impairs the obligation of their

bonds and is in violation of its rights under the Constitution of the United States, particularly article 1, § 10.

The bonds on their face show them to be special assessment or improvement bonds issued under authority of the Uniform Bond Act of Ohio, and pursuant to an ordinance of the Parma city council duly passed on the 5th day of October, 1931. Payment is provided to be made in lawful money of the United States.

█ One of the tests that a contract has been impaired is that its value has by legislation been diminished. The applicable section of the Constitution of the United States provides that the contract shall not be impaired at all. It is not a question of degree, manner, or cause, but one of whether the subsequent legislation of the state encroaches in any respect on the obligation of the contract or dispenses with any part of its force. The bond has not been altered; the obligation of performance, it is assumed, still remains; but how about the means of enforcement? Probably no complaint could be made if all of the special assessment bonds were owned by payers of special tax assessments. This statute of Ohio and the authorized action under it would afford a mutually satisfactory method of discharging the respective obligations as between a special taxpayer and the city of Parma. The full amount of the special taxes could be paid with bonds at their full face value. Up to the amount of the bonds held or acquired by the special taxpayer, his delinquency could be avoided and the city could cancel its bonds, thus reducing its bonded debt. The integrity of the bond in such case would be unimpaired.

But what of bondholders who are not taxpayers, like the plaintiff? Has the means for discharging the obligations of its bonds been lessened or affected adversely by the challenged legislation?

The complainant's bonds call for dollars at maturity, not tax credits. It is not enough to say that the favorable public reception of the legislation has enhanced the present market for the sale of the bonds, and that if this bondholder sells it will not have lost as much as would have been the case if the legislation had not been enacted. Improving the market for a fixed obligation does not fulfill or discharge it. The security of the bonds has not been improved by the demand of special taxpayers for the bonds with which to pay special taxes at a discount. Putting the taxpayers' money into the bonds does not build up the special assessment fund for the discharge of the bonds according to their tenor.

It is true that as a practical matter the acceptance of bonds, as provided by the statute, and their cancellation thereby, reduces the bonded obligations of the city and in a sense would seem to improve the position of those outstanding. There would be no cause for relief here if the city had collected and received a fund for the discharge of such outstanding bonds. But, carried to its logical conclusion, it is more than probable that the only means remaining for the enforcement of the bonds will be the hope of payment by taxpayers who had no money with which to buy the bonds at the depreciated value. Thus, the attempt of the state to ameliorate the financial straits of the city and the taxpayer impairs the contract of the nontaxpaying bond holder. It is my considered judgment that section 10 of article 1 of the Constitution of the United States stands in the way.

It is possibly true, under the facts relating to the present financial status of the city of Parma, that the complainant might be money ahead if it sold its bonds on the present rising market; but whether it chooses to do so, or to gamble on the ultimate worthlessness of the bonds, is not material in the consideration of the question of the impairment of obligation in the constitutional sense.

While it is stipulated that the constitutional limit has been levied on the general tax duplicate of the city and that no provision has been made in the general tax rate for payment of the principal or interest of these bonds, the defendant treasurer contends that the city has irrevocably pledged its faith, credit, and revenue to the payment of the principal and interest of these bonds, and that they constitute a general obligation against the general fund of the city; that general taxes must be paid at the same time that special taxes may be credited with bond payments. But this does not change the fact that the nontaxpaying bondholder has the right to the means of enforcement which are implicit in the receipt and application of money for the payment of special assessments. This subsequent legislation lessens the efficacy of these means, and to that extent impairs the obligations of these bonds.

The injunction will be made permanent.