No. 14,502.

Re Foreclosure of Paving Assessments in the City of Golden.

City of Golden *v.* Schaul et al.

(95 P. [2d] 806)

Decided October 23, 1939.

Mr. J. E. McCall, Mr. A. D. Quaintance, Mr. E. B. Evans, for plaintiff in error.

No appearance for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

Because of the rather unusual situation presented, we deem it proper, for a better understanding of the controversy, to relate the circumstances leading up to the institution of this action. Such of the historical data applying to the antecedent situation and concerning which there seems no disagreement, and which does not appear in the record, has been derived from the oral argument and briefs of counsel.

In 1923 the city of Golden embarked on a program of street paving, in connection with which a number of local improvement districts, including No. 3 here involved, were formed. After these districts were created, bonds were issued in the usual manner and when the improvements were completed, assessments were levied for the purpose of paying the bonds. In district No. 3, bonds dated June 1, 1923, payable in lawful money of the United States, were issued pursuant to the authority conferred under sections 65 to 107, chapter 138, '35 C. S. A. (chapters 180, 181, S. L. 1923). From almost the beginning some property owners in the various districts

defaulted in the payments of the annual installments on the assessments levied against their property. Notwithstanding these defaults successive county treasurers of Jefferson county, in which the city of Golden is situate, failed to sell any of the property, the owners of which had defaulted in payment of assessments, as the pertinent statutes directed they should. This situation continued until 1937. In that year the law firm of Simon & Drexler, members of which with our permission appear here as amici curiae, acting for the holders of the bonds of a number of the districts in another proceeding, obtained a writ of mandamus commanding the county treasurer to sell all the property of such districts, owners of which were delinquent in the payments of special assessments. Under the writ the sale was to be held at the same time as that for delinquent taxes, in December, 1938. After the writ had been issued as concerning district No. 3, the city commenced the present proceeding grounded upon sections 108 to 125, chapter 138, '35 C. S. A. (chapter 190, S. L. 1927), which, if consummated will relieve the county treasurer of his obligation to sell, and place this function in the hands of the city treasurer. In accordance with the provisions of the 1927 statute, supra, the persons entitled to notice of the hearing upon the city's petition were duly served and on August 3, 1938, the matter came on for hearing on the petition before the Honorable H. E. Munson, sitting for the Honorable S. W. Johnson, in the district court of Jefferson county. None of the owners of the property or others interested therein appeared or filed objections and default was entered against them. Counsel for the city thereupon tendered to the court a proposed decree of foreclosure. In the decree so tendered it was provided that the property be sold by the city treasurer "for cash in hand *or an equal amount of the bonds of said paving district No. 3.*" The italicized portion of this provision admittedly is grounded on the 1927 statute (section 119, chapter 138, '35 C. S. A.), which provides

that bonds of a given local improvement district may be applied toward the payment of the purchase price at the sale of property for delinquent assessments. At the time of tender of the proposed decree Mr. Simon, a member of the law firm which had represented the relators in the mandamus proceeding above mentioned, was present in court, and stating that he still represented such bondholders, asked permission to appear as amicus curiae, which request was accorded by the district court. Mr. Simon then advanced certain objections to the form of the tendered decree, asserting that as applied to the bonds of District No. 3, issued in 1923, the provisions of section 119, supra, of the 1927 act, is unconstitutional and void in that it impairs the obligations of the 1923 bond contracts in making them payable in something other than lawful money of the United States by allowing the assessments, which were levied to provide a fund for the payment of the bonds, to be paid by the bonds of the district, all contrary to the provisions of section 10, article 1 of the Constitution of the United States and to the provisions of section 11 of article 2 of the Constitution of the state of Colorado. After argument of this and other questions later to be mentioned, the trial court took the matter under advisement and in due course announced his opinion in general accord with the position of amicus curiae, and, harmonious therewith, on October 20, 1938, formally entered the decree of foreclosure to which error is here assigned. Upon the subject under discussion, the entered decree provided: "Such sales shall be made for cash only and he [the city treasurer] shall not permit any purchaser, for the purpose of making settlement or payment for the property purchased, to turn in or apply toward the payment of the purchase price of any of the bonds or matured and unpaid interest coupons of Paving District Number 3." The city contends that it was error to insert this provision in the decree and asserts that the terms of the 1927 act concerning the medium of purchase are appli-

cable to this sale for assessments, payment of which was in default.

As might well be expected from the manner in which the constitutional question under discussion was injected into the case, counsel for the city protest that the trial court had no legal authority to consider this matter and suggest on this ground that we should strike the challenged provision from the decree without further consideration. In support of this position they point out that we have held that a court should not deal with constitutional questions except when raised by some one claiming to have suffered *(United States Building & Loan Ass'n v. McClelland,* 95 Colo. 292, 36 P. [2d] 164), and that only those whose rights are affected by the enforcement of a law may question its constitutionality. *Post Printing & Pub. Co. v. Denver,* 68 Colo. 50, 189 Pac. 39. That such generally is the rule cannot be doubted and ordinarily only those who are parties to a suit may question the constitutionality of a statute involved therein. 16 C. J. S., p. 176, §83. Nor, as a general rule, will a court inquire into the constitutionality of a statute on its own motion. 16 C. J. S., p. 220, §96. "This is not an inflexible rule, however, and in some instances constitutional questions inherently involved in the determination of the cause may be considered even though they may not have been raised as required by orderly procedure." 16 C. J. S., p. 221, §96, and cases cited in footnote 24. The soundness of the exception is obvious when it is considered that a court should not enter a decree which is void for constitutional reasons. This principle is recognized in the case of *New York Life Ins. Co. v. Hardison,* 199 Mass. 190, 85 N. E. 410, 127 Am. St. Rep. 478, wherein it was said that since a decree pronounced by a court without jurisdiction is void, the validity of the statute upon which the jurisdiction of the court depends may be considered upon its being brought to the attention of the court by persons interested in the effect to be given the statute, although

not directly interested in the pending proceeding. See, also, 16 C. J. S., p. 176, §83. We cannot, therefore, say that under the circumstances the trial court acted other than properly in considering the constitutional aspects of the decree tendered, to the end that what it believed a valid decree might enter.

Further, as the matter comes to us, the city, a party of record, in the proceeding below, to justify the elimination of the included provision of the decree is placed in the position of contending that as to this matter the decree tendered by it was legally proper. In this sense, the relief here sought by the plaintiff in error of necessity requires a consideration of the constitutional question advanced. Actuated by these considerations and the further circumstance that, as counsel advise, the same uncertainty is involved in proceedings relating to several other improvement districts in Jefferson county, we deem it our duty to notice the contention.

■ Extensive annotations on the general subject of what constitutes an impairment of a special assessment bond contract are to be found in 85 A. L. R. 244 and in 97 A. L. R. 911. In the former it is said at page 245: "It is a general rule that where contracts for public improvements are made under authority of statutes which provide for the issuance of bonds or other evidences of indebtedness to defray the expense thereof, which are made a charge or lien upon the land benefitted by the improvement, the provisions of the statute, or the bond, or other evidence of indebtedness adopted to secure payment of the indebtedness enter into and become a part of the contract to such extent that the obligation of the contract cannot thereafter be impaired or its fulfilment hampered or obstructed by any subsequent legislation." Where at the time local improvement district bonds were issued the prevailing law required the assessments from which the bonds were to be retired to be paid in cash, the adjudicated cases generally hold that later legislation permitting the property owners to pay their

assessments with bonds of the district, is unconstitutional as applied to bonds of prior issue. *Jones v. La Vigne,* 202 Wis. 64, 231 N. W. 588, 85 A. L. R. 242; *Davis v. McCasland,* 182 Okla. 49, 75 Pac. 1118; *Harris v. City of Miami,* 6 F. Supp. 305; *Norfolk & W. Ry. Co. v. Boyle,* 12 F. Supp. 522; *Kercheval v. Ross,* 7 F. Supp. 355; *Wall v. McNee,* 87 F. (2d) 768. While these cases deal with statutes permitting property owners to use bonds to pay assessments before sale, and the statute before us permits bidders at the sale to use bonds as a purchasing medium, this factual distinction is of little legal consequence in considering the problem here, since in the case of *Tew v. Phillips,* 73 Colo. 408, 216 Pac. 525, we determined that in the final analysis the purchaser at a tax sale pays the taxes, and certainly, under either practice, the ultimate status of the bond holder would be substantially similar.

In the light of the unanimity of the decisions declaring that a subsequent statute changing the legal tender in which debts of a local improvement district previously created on the faith of an existing law may be paid, impairs the obligation of the antecedent bond contracts, we deem it unnecessary to further discuss the subject. Rather, as indicative of the view of the courts thereon, we quote from the opinion of *McNee v. Wall,* 4 F. Supp. 496: "The act of 1923, by authority of which the district issued its bonds, provides for the annual collection of taxes 'in the same manner as other taxes are collected.' Under an established principle of law, as well as by its terms, that statute entered into and formed a part of the contract between the district and any holder of its bonds. McCracken v. Hayward, 2 How. 608, 614, 11 L. Ed. 397; Hull v. State, 29 Fla. 79, 88, 11 So. 97, 16 L. R. A. 308, 30 Am. St. Rep. 95. The obligation of a contract is the means provided by law for the enforcement of it. Sturges v. Crowninshield, 4 Wheat. 122, 197, 4 L. Ed. 529. Any law which materially changes the binding force of a contract necessarily impairs it.

Green v. Biddle, 8 Wheat. 1, 84, 5 L. Ed. 547; Ogden v. Saunders, 12 Wheat. 213, 256, 6 L. Ed. 606. Under the law of the contract, the district's taxes, like state and county taxes, could be paid or redeemed only in money, since there was then no provision of law permitting settlement or discharge of any taxes in any other way. Frier v. State, 11 Fla. 300; Finnegan v. Fernandina, 15 Fla. 379, 21 Am. Rep. 292. In our opinion subsequent legislation which so materially changes the contract as to permit the payment or redemption of taxes in bonds in lieu of money necessarily impairs that contract and must fail in its object because it violates section 10 of article 1 of the Federal Constitution. In Crummer v. City of Fort Pierce, 2 F. Supp. 737, this court held that current taxes, which the law of the contract provided should be payable in money only, could not by subsequent legislation be made payable in bonds in lieu of money." This case was appealed to the Supreme Court of the United States where in a memorandum opinion (296 U. S. 547) the decree was reversed on a procedural point and the cause remanded. The district court again held the statute unconstitutional which judgment was affirmed by the Circuit Court of Appeals. *Wall v. McNee, supra.* We must therefore conclude that in the particular discussed, the 1927 act had the effect of impairing the contract expressed in the 1923 bonds, and in that particular it was void. We do not believe it was improper, where the position of the city had been otherwise proclaimed in the tendered decree, for the trial court affirmatively to provide in the entered decree that bonds be not accepted in payment of bids at the sale.

The case of *Tew v. Phillips, supra,* strongly relied upon by the city, is not pertinent to the question under consideration. There the law under which the *bonds were issued* specifically provided that bonds of the district should be accepted in payment of assessments. No question as to *subsequent* legislation nor impairment of the bond contract was suggested or involved. The sole

issue was one of statutory construction to determine whether, as was held proper, a purchaser of property at a tax sale might pay therefor in part—irrigation district taxes—with bonds and interest coupons of the district. Also, while it is true, as the city asserts, that a statute regulating a *remedy* for enforcing a bond payment does not impair its obligation (16 C. J. S., p. 831, §385), this rule is inapplicable where the statute *changes the substantive rights* of the parties, as we have determined is the situation here. 16 C. J. S., page 828, §381, footnote 40.

In addition to the provision last discussed the trial court incorporated in the entered decree the following paragraphs to which objection is made by the city, to wit: "And it is further ordered, adjudged and decreed that the treasurer shall credit the monies received from the sale of said lots to said Paving District No. 3 and that said treasurer shall apply said monies to the payment of any interest which may at such time be delinquent on the bonds of Paving District No. 3, provided that if, after the payment of such interest, there remains in the fund an amount of money exceeding six months interest on the unpaid principal of the bonds, such excess shall be used to redeem such bonds in their numerical order. And it is further ordered, adjudged and decreed that in the event the said City shall become the purchaser of any of said parcels of land and receive a certificate of purchase therefor, or a deed therefor, the said City of Golden shall not sell any of said tracts of land for a sum less than the amount of said assessment, together with interest, penalties and costs."

It is to be observed that both these provisions relate to situations and dispositions arising *after* the foreclosure sale, whereas the provision last previously considered, the objection to which we have sustained, pertained to the procedure *at* the foreclosure sale and was directly incidental thereto. As appears from the opinion of the trial court preceding the decree, these latter paragraphs were included therein to insure a disposition of

the proceeds of the sale, and of such certificates of purchase as thereat might be issued to the city in accordance with the court's construction of the 1923 act under which the bonds were executed. Amici curiae, at whose suggestion apparently these provisions were included in the decree, concede that the issues with respect thereto could not ultimately be determined in this proceeding by the trial court or by us. The argument of amici curiae in attempted justification of the inclusion, to the effect that this portion of the decree will not be res judicata as to the bond holders, since they are not parties here, and that notwithstanding the declarations made, interested parties will still be free to litigate these matters, is not convincing, and suggests rather that herein they should not have been prejudiced at all. Even with the decree silent on the subject, it is to be assumed that the monies realized from the assessments, through either the sale or by the ordinary payment thereof, will be disbursed as by law provided, and that should the city, as a result of the sale, acquire certificates of purchase or deeds to property, no unlawful disposition thereof will be attempted. If the contrary is essayed, the parties directly concerned will have ample recourse in a proper proceeding. Upon the premise that the trial court was premature in attempting to decree with respect to these matters, we are of the opinion that both the paragraphs last quoted should be omitted from the decree. As indicative of the controversies which may arise, the city contends that all the outstanding bonds should share ratably in the proceeds received from the assessments, as a result of which they say it was error for the trial court to order, as the first paragraph above provides, that the bonds should be retired numerically. In making this contention the city assumes that the district is insolvent or at least that insufficient funds will be realized from assessments to pay all of the bonds with the interest thereon in full, and the cases they cite—*Thomas v. Patterson,* 61 Colo. 547, 159 Pac. 34; *Jewel v.*

*City of Superior,* 135 Fed. 19; *State ex rel. v. Little River Drainage Dist.,* 334 Mo. 753, 68 S. W. (2d) 671; *State ex rel. v. Duncan,* 334 Mo. 733, 68 S. W. (2d) 679—are conditioned upon the assumed premise or a different statutory situation. While the defaults in the payments of assessments, bonds and interest, which already have occurred may suggest an insufficiency of funds to discharge the total bond obligations and even may forecast an ultimate insolvency, this contention was not an issue herein nor established by the record, and hence was collateral to this foreclosure proceeding. Recently in the case of *Eisiminger v. Elliott,* 103 Colo. 216, 84 P. (2d) 823, where a similar question was extrinsically suggested, we said: "The circumstance that the statute creates a numerical priority for payment of the bonds has no place in the controversy before us * * *. Considerations in this connection which might arise from a status of ultimate insolvency of this or any district are not involved in this proceeding and their determination must await the time of the happening of such a contingency."

Consistent herewith the cause is remanded with directions to strike the paragraphs last quoted and discussed, from the decree; otherwise the judgment is affirmed.