**In re Constitutionality of the Confidential Intermediary Statute, Karin Jeanne TOMLINSON, Petitioner–Appellant.**

**In re Constitutionality of the Confidential Intermediary Statute, Robert Sean WOOD, Petitioner–Appellant.**

**Nos. 92SA107, 92SA136.**

Supreme Court of Colorado,
En Banc.

April 26, 1993.

Holland & Hart, A. Bruce Jones, Patricia Dean, Kathryn A. Skendzel, Denver, for petitioners-appellants.

Pryor, Carney and Johnson, P.C., Rodney R. Patula, Michael G. Bohn, Englewood, for amicus curiae Adoptees in Search (AIS).

T. Michael Carrington, Denver, Kirton, McConkie & Poelman, David M. McConkie, Merrill F. Nelson, Salt Lake City, UT, for amicus curiae LDS Social Services.

Justice ERICKSON delivered the Opinion of the Court.

This is an appeal from an order of the Juvenile Court for the City and County of Denver declaring the Confidential Intermediary Statute, sections 19–5–301 to –304, 8B C.R.S. (1992 Supp.), unconstitutional.[1] The appellants, Karen Jeanne Tomlinson (Tomlinson) and Robert Sean Wood (Wood), assert that the juvenile court did not have judicial authority to review the constitutionality of the statutory provisions and could not *sua sponte* find that the Confidential Intermediary Statute was unconstitutional. We agree. We reverse the ruling of the juvenile court and remand with directions to appoint a confidential intermediary if the appellants meet the statutory requirements.

## I

### A

■ The General Assembly enacted the Confidential Intermediary Statute in March 1989 to provide qualified access to sealed adoption information. *See* § 19–5–301, 8B C.R.S. (1992 Supp.). Individuals who satisfy the requirements of the Confidential Intermediary Statute can petition for the appointment of a trained, neutral, nonparty known as a "confidential intermediary." § 19–5–304(2), 8B C.R.S. (1992 Supp.). Section 19–5–304(2) provides:

> Any adult adoptee, adoptive parent, biological parent, or biological sibling who is twenty-one years of age or older may file a motion, with supporting affidavit, in the court where the adoption took place, to appoint one or more confidential intermediaries for the purpose of determining the whereabouts of his unknown relative or relatives; except that no one shall seek to determine the whereabouts of a relative who is younger than twenty-one years of age. The court may rule on said motion and affidavit without hearing and may appoint a trained confidential intermediary.

■ The intermediary, as an officer of the court, is authorized to inspect confidential relinquishment and adoption records in order to identify and contact sought-after relatives. § 19–5–304(1)(b)(I). Any information obtained by the intermediary during his or her investigation is strictly confidential and may be used only for the purpose of arranging contact between the petitioner

---

1. This appeal was taken pursuant to C.A.R. 1 and section 13–4–102(1)(b), 6A C.R.S. (1987).

and the sought-after relative. § 19–5–304(3).

Contact between the two parties occurs only after both have consented to personally communicate with one another and the court has received written consent of both parties. § 19–5–304(4)(a)–(b). If consent for personal communication is not obtained from both the petitioner and the sought-after relative, all relinquishment and adoption records and any information obtained by the intermediary during the course of the investigation are returned to the court and remain confidential. § 19–5–304(4)(c).

## B

On May 2, 1990, Wood, an adoptee, filed a motion for the appointment of a confidential intermediary in juvenile court pursuant to the provisions of the Confidential Intermediary Statute. Tomlinson, another adoptee, filed a similar motion on May 9, 1990. The juvenile court, on its own motion, joined Wood and Tomlinson with four other individuals who sought access to adoption information, and scheduled a hearing "to determine whether the court should appoint a Confidential Intermediary and to have good cause shown." Tomlinson subsequently appeared at hearings on June 5, 1990, and on August 31, 1990, to present evidence and testimony.

On December 10, 1990, the juvenile court sent written notification to the Colorado Attorney General that it was considering declaring the Confidential Intermediary Statute unconstitutional. The juvenile court raised several questions relating to the constitutionality of the Confidential Intermediary Statute and invited briefs from the Attorney General and from the six indi-

viduals before it who had petitioned for appointment of a confidential intermediary. Only Tomlinson filed a brief in response to the constitutional inquiries.

On January 10, 1992, the juvenile court issued a ruling denying the motions for the appointment of a confidential intermediary made by the appellants and the other four individuals based on its conclusion that the Confidential Intermediary Statute was unconstitutional.[2] The appellants subsequently filed separate notices of appeal in this court. *See* § 13–4–102(1)(b), 6A C.R.S. (1987) (providing that the court of appeals has no jurisdiction over cases in which the constitutionality of a statute is in question). We reverse.

## II

"Axiomatic to the exercise of judicial authority is the principle that a court should not decide a constitutional issue unless and until such issue is actually raised by a party to the controversy and the necessity for such a decision is clear and inescapable." *People v. Lybarger*, 700 P.2d 910, 915 (Colo.1985) (reversing conviction based on trial court's *sua sponte* determination that statute was facially unconstitutional); *see also Kelley v. South Jeffco Metro. Recreation & Park Dist.*, 155 Colo. 469, 473, 395 P.2d 210, 212 (1964) (holding that courts should not pass on the constitutionality of a law unless necessary for a decision of the cause under consideration); *Hauf Brau v. Board of County Comm'rs*, 145 Colo. 522, 529, 359 P.2d 659, 663 (1961) (finding that trial court's conclusion declaring statute unconstitutional was erroneous because it was "wholly outside the issues the court was called upon to review"); *Golden v. Schaul*, 105 Colo. 158, 162, 95 P.2d 806, 808 (1939) (holding that "[a]s a

---

**2.** The juvenile court concluded that the Confidential Intermediary Statute (1) violated the sought-after relatives' constitutional rights of privacy and confidentiality; (2) operated retroactively in violation of article II, section 11 of the Colorado Constitution; and (3) represented an improper delegation of the legislative function. Because the juvenile court erred in addressing the constitutionality of the Confidential Intermediary Statute, we do not review the substantive conclusions of the juvenile court.

The juvenile court used the permissive language of § 19–5–304(2) to buttress its conclusion that the Confidential Intermediary Statute was unconstitutional. While an interpretation of the statutory language of section 19–5–304(2) is beyond the scope of our review, the juvenile court's interpretation appears to be contrary to the legislative history of that section.

general rule, a court will not inquire into the constitutionality of a statute on its own motion").

■ Instead, courts exist for the purpose of deciding live disputes involving " 'flesh-and-blood' legal problems with data 'relevant and adequate to an informed judgment.' " *Lybarger*, 700 P.2d at 915 (quoting *New York v. Ferber*, 458 U.S. 747, 767–68, 102 S.Ct. 3348, 3359–60, 73 L.Ed.2d 1113 (1982)). Accordingly, judicial authority may be exercised only if an actual controversy exists. *E.g., Tippett v. Johnson*, 742 P.2d 314, 315 (Colo.1987) (holding that the duty of a judicial tribunal is to decide actual controversies); *Barnes v. District Court*, 199 Colo. 310, 312, 607 P.2d 1008, 1009 (1980) (same); *People v. District Court*, 78 Colo. 526, 530, 242 P. 997, 998 (1925) (same); *see also Colorado General Assembly v. Lamm*, 700 P.2d 508, 516 (Colo.1985). If there is no actual controversy between adverse parties, the matter is not a proper one for judicial resolution. *See League of Women Voters v. F.C.C.*, 489 F.Supp. 517, 520 (C.D.Cal.1980) (stating that courts are "designed to resolve concrete disputes between at least two parties possessing adversary interests").

■ In this case, the appellants filed motions with the juvenile court for the appointment of confidential intermediaries pursuant to the statute. None of the parties before the juvenile court claimed that the Confidential Intermediary Statute was unconstitutional. Moreover, there were no adverse parties at the *ex parte* hearings before the juvenile court and no actual controversy as to the constitutionality of the Confidential Intermediary Statute existed. Instead, the juvenile court raised an issue on behalf of unidentified parties that were not before the court on its own motion in order to create a controversy that it then proceeded to decide. We are satisfied that the juvenile court's ruling that the Confidential Intermediary Statute was unconstitutional represented an impermissible exercise of judicial authority. *See Lybarger*, 700 P.2d at 915–16.

## III

Instead of applying the foregoing principles, the juvenile court found that it could properly address the constitutionality of the Confidential Intermediary Statute based on its own interpretation of Colorado case law. We disapprove of the procedure followed by the juvenile court judge in this case. In fact, the three cases relied upon by the juvenile court support our conclusion that the juvenile court should not have *sua sponte* determined the constitutionality of the Confidential Intermediary Statute, because the exceptions delineated in those cases do not apply and because there was no actual controversy regarding the constitutionality before the juvenile court.

■ As noted above, as a general rule, a court will not inquire into the constitutionality of a statute on its own motion. *Golden v. Schaul*, 105 Colo. 158, 162, 95 P.2d 806, 808 (1939). We have recognized, however, that under certain limited circumstances, a court may decide a constitutional issue without the issue being raised by a party to the controversy.

*Golden* first addressed situations where the general rule prohibiting a court from *sua sponte* addressing the constitutional validity of a statute does not apply. *Golden* concluded that "constitutional questions *inherently involved* in the determination of the cause may be considered even though they may not have been raised as required by orderly procedure." *Id.* (emphasis added); *see also Howell v. Woodland School Dist.*, 198 Colo. 40, 44, 596 P.2d 56, 57–58 (Colo.1979) (affirming decision of trial court which addressed the constitutionality of a statute where it was necessary for the trial court to address the issue to determine whether relief was proper and the appropriate form of relief), *overruled on other grounds by deKoevend v. Board of Educ.*, 688 P.2d 219, 230 (Colo. 1984).

*Mountain States Telephone & Telegraph Co. v. Animas Mosquito Control District*, 152 Colo. 73, 380 P.2d 560 (1963), further delineated the situations where a court can properly address the constitutionality of a statute on its own motion. In

considering the constitutionality of an exclusion clause in a statute, *Mountain States* found:

> Though generally it is not considered good practice for courts to resolve cases on grounds not urged by the parties or their counsel, yet in cases such as we have before us, when much of the argument revolves around which of two words and meanings the legislature intended, and *which by either interpretation reveals legislation that is patently unconstitutional and void, and under which many persons are receiving unfair, discriminatory and unlawful treatment,* it is the duty of the courts to resolve the question to the end that citizens may not be deprived of their constitutional rights.

*Id.* at 77, 380 P.2d at 562 (emphasis added).

 In our view, the facts of this case do not fall within the exceptions that we have recognized which permit *sua sponte* consideration of constitutional questions. The constitutionality of the Confidential Intermediary Statute was not inherently involved in the *ex parte* hearings before the juvenile court to appoint a confidential intermediary and the Confidential Intermediary Statute is not patently unconstitutional and void. *Cf. Howell,* 198 Colo. at 44, 596 P.2d at 57–58; *Mountain States,* 152 Colo. at 77, 380 P.2d at 562; *Golden,* 105 Colo. at 162, 95 P.2d at 88.

 Moreover, we reiterate that an actual controversy between adverse parties must exist if a court is to *sua sponte* address the constitutionality of a statute. *E.g., Howell,* 198 Colo. at 44, 596 P.2d at 56; *Mountain States,* 152 Colo. at 73, 380 P.2d at 560; *Golden,* 105 Colo. at 158, 95 P.2d at 86.

### IV

Accordingly, we reverse the order of the juvenile court and remand with directions to appoint a confidential intermediary if the appellants meet the statutory requirements.

