## No. 13,451.

UNITED STATES BUILDING AND LOAN ASSOCIATION ET AL. *v.*
McCLELLAND, COMMISSIONER.
(36 P. [2d] 164)

Decided July 9, 1934.  Rehearing denied September 10, 1934.

Mr. FRED S. CALDWELL, for plaintiffs in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. J. GLENN

Donaldson, Assistant, Mr. Bernard J. Seeman, for defendant in error.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

This case is brought here for review of a judgment entered by the district court of Denver denying injunctive and other relief to the plaintiffs in error, plaintiffs below, three building and loan associations duly organized under the laws of Colorado. The defendant in error is the state commissioner of building and loan associations.

On December 19, 1933, the commissioner made upon each of the three associations a written demand, of which the following is a sample:

"Whereas, the Governor of the State of Colorado has approved the application of the Commissioner of Building and Loan Associations to take possession of the property, business and assets of the United States Building and Loan Association under the authority conferred upon him by the Building and Loan Code, approved and in effect June 8, 1933, and particularly Section (9) of Article VIII thereof, we demand that you forthwith turn over to the Department all books, records, collateral and property in your possession.

"Further, we require that the President and Secretary of your Association comply with Section (14) of Article VIII and make a schedule of all the property and assets and of all collateral held as security for loans and make oath that such schedule sets forth all such property, assets and collateral, which such Association owns or to which it is entitled.

"Very truly yours,
"[Signed] James R. McClelland,
"Commissioner."

By the present action the associations sought to enjoin

the commissioner from attempting to enforce his demand, and from entering their places of business for the purpose of taking possession or proceeding under said article VIII of chapter 47, S. L. 1933, mentioned in the demand.

The district court took evidence and refused to issue an injunction, a demurrer interposed to the complaint on the ground of insufficient facts was sustained, and, the associations electing to stand on their complaint, the case was dismissed. This, the associations complain, was prejudicial error. The sections of the 1933 statute referred to in the above quoted demand of the commissioner are as follows:

"If the Commissioner, as the result of any examination or from any report made to him, shall find that any Association doing business in this State is violating the provisions of its Articles of Incorporation or By-Laws, or of the Laws of this State provided for its Government, or is conducting its business in an unsafe or unauthorized manner, he may by an order addressed to such Association direct a discontinuance of such violations or unsafe or unauthorized practices and a conformity with all the requirements of law; and if such Association shall refuse or neglect to comply with such order within the time specified therein, or if it shall appear to the Commissioner that any Association is in an unsafe condition or is conducting its business in an unsafe manner such as to render its further proceedings hazardous to the public or to any or all of its members, or if he shall find that its assets are impaired to such an extent that it threatens loss to the withdrawable shares, or if any Association shall refuse to submit its books, papers and accounts to the inspection of the Commissioner or any of his examiners, deputies or assistants, or if any officer shall refuse to be examined upon oath concerning the affairs of such Association, then the Commissioner may revoke the Certificate of Authority of such Association which shall act as an injunction against the Association

issuing any new shares or stock, making any new loans, transferring any shares or stock, or making any change in its managerial or directorial personnel during the time such revocation is in effect, and may demand and, with the written approval of the Governor of the State of Colorado, take possession of the property, business and assets of such Association and retain such possession until such Association shall, with the consent of the Commissioner, resume business, or until its affairs be liquidated. Such Association, may, with the consent of the Commissioner, resume business upon such conditions as may be prescribed by the Commissioner, but such Building and Loan Association shall pay all the expenses of the Commissioner and his Deputies and Employes in so taking possession of its property and assets.'' S. L. 1933, c. 47, art. VIII, page 340, §9.

''Upon taking possession of the property, business and assets of any Association, the Commissioner shall require the President and Secretary of such Association to, and such officers shall, make a schedule of all its property and assets, and of all collateral held by it as security for loans, and make oath that such schedule sets forth all such property, assets and collateral, which such Association owns or to which it is entitled, and shall deliver such schedule, and the possession of any and all such property and collateral as may not have been so previously delivered, to the Commissioner, who may at any time examine under oath such President and Secretary, or other Officers of such Association, or the Directors, Agents or Employes thereof, to determine whether or not all the property, assets and collateral which such Association owns, or to which it is entitled, have been transferred and delivered into his possession.'' S. L. 1933, c. 47, art. VIII, page 344, §14.

It is argued by the associations that certain portions of the aforesaid article VIII of chapter 47, S. L. 1933, commonly known as the Building and Loan Code, con-

travene the Constitution of the United States and the Constitution of the state of Colorado.

Thus the following contentions are put forth: 1. The due process provisions of both the federal Constitution (Fourteenth Amendment) and the state Constitution (Article II, §25) are violated by that part of section 3 of article VIII of the Building and Loan Code which reads (S. L. 1933, page 334): "The Commissioner * * * shall have full power to grant, refuse or revoke a permit or license to any Association to do business in this State when such Association is not conducting its business in conformity with the laws of the State, or is conducting its business in an unsafe manner such as to render its further operations hazardous to the public or any of its shareholders * * *." 2. They are likewise violated by section 9 of article VIII of the Building and Loan Code, already quoted. 3. Article III of the state Constitution, providing for the separation of the three main branches of the state government, is violated by the aforesaid section 9, which is said to confer judicial power upon an executive officer. 4. Section 15 of Article II of the state Constitution, which inhibits the taking of private property for public or private use without just compensation, is violated by that part of the aforesaid section 9 which reads (S. L. 1933, page 341): "* * * such Building and Loan Association shall pay all the expenses of the Commissioner and his deputies and employes in so taking possession of its property and assets." 5. Section 7 of Article II of the state Constitution, which guarantees against unreasonable searches and seizures, is violated by that part of the aforesaid section 9 which reads (S. L. 1933, page 341): "* * * and [the commissioner] may demand and, with the written approval of the Governor of the State of Colorado, take possession of the property, business and assets of such Association, and retain such possession until such Association shall, with the consent of the Commissioner, resume business, or until its affairs be liquidated * * *." 6. Section 1 of Article

VI of the state Constitution, which provides for the judicial department and defines its powers, is violated by that part of section 11 of Article VIII of the Building and Loan Code which reads (S. L. 1933, page 342): "No receiver shall be appointed for any Building and Loan Association * * *." 7. Section 10 of article I of the federal Constitution and section 11 of article II of the state Constitution, directed against the impairment of contract obligations, are violated by that part of section 12 of article VIII of the Building and Loan Code which reads (S. L. 1933, page 343): "* * * and within six (6) months after taking such possession, he [the commissioner] may disaffirm any executory contracts, including leases, to which such Association is a party, and disaffirm any partially executed contracts, including leases, to the extent that they remain executory." 8. Article III of the state Constitution, already referred to in contention 3 above, is likewise violated by that part of section 13 of article VIII of the Building and Loan Code which reads (S. L. 1933, page 343): "* * * and if such demand be not complied with within twenty-four (24) hours after service, the Commissioner may call to his assistance the sheriffs of the County in which the principal place of business of such Association is located, by written demand under his hand and official seal, whereupon it shall become the duty of such official to enforce the demands of the Commissioner." 9. Section 10 of article I of the federal Constitution and section 11 of article II of the state Constitution, referred to in contention 7 above, are likewise violated by section 15 of article VIII of the Building and Loan Code (S. L. 1933, page 344). 10. Article III of the state Constitution, relating to the division of governmental powers, is likewise violated by said last-mentioned section 15 of article VIII. 11. Section 6 of article II of the state Constitution, which guarantees to every person a speedy remedy in court, and right and justice without sale or denial or delay, is violated by section 11 of article VIII of the Building and Loan Code.

■ Certain of the above eleven numbered contentions or propositions are at once recognized as incapable of being invoked by the associations. The alleged right of creditors or shareholders to subject, or try to subject, an association to a receivership, claimed under proposition 6, as against the express prohibition of receiverships in the statute, is not now before us, for, not being a creditor or shareholder, the association cannot complain. Proposition 11 involves practically the same issue, and for the same reason is overruled. Proposition 7 assails the right purported to be conferred upon the commissioner to disaffirm certain contracts and says that it impairs the obligations of those contracts; but no attempt or threat to exercise that right is shown. The same is true of a similar contention made by proposition 9. Neither issue is before us at this time. Nor need we determine whether there is any merit in proposition 8, claiming that the provision for summary and forcible taking of possession by the commissioner with the aid of a sheriff is unconstitutional; since no such case has arisen. "When someone who claims to have suffered * * * raises the question, it will be time for us to deal with it." *Boyer Bros. v. Commissioners,* 87 Colo. 275, 284, 288 Pac. 408, 412. Compare *Cavanaugh v. People,* 61 Colo. 292, 294, 157 Pac. 200, 201; *Newman v. People,* 23 Colo. 300, 311, 313, 47 Pac. 278, 280, 283; *Airy v. People,* 21 Colo. 144, 155, 40 Pac. 362, 366.

■■ The remaining propositions of counsel, numbered 1, 2, 3, 4, 5 and 10, directly involve the question whether such regulation as is provided for in article VIII of chapter 47, S. L. 1933, page 331 et seq., the so-called Building and Loan Code aforesaid, is valid and constitutional. Similar regulatory legislation affecting banks has been on the statute books of Colorado for many years, and has been extensively and uniformly enforced. The principles underlying the regulation of building and loan associations and those underlying the regulation of banks are similar. The public interest justifying such

regulation is virtually the same in each case. It is not necessary to go into details at this time. It is quite possible that some questions or doubts might arise at the instance of particular interested persons which would require careful consideration; but, inasmuch as the associations cannot require us to settle such possible questions or doubts for others, or as purely academic problems, they do not call for decision in this case. We have no hesitancy in declaring that the taking over of a building and loan association by the commissioner under the aforesaid section 9 is free from any of the constitutional objections appropriately raised by the associations in this record. Building and loan associations are purely the creatures of statute. Sundheim, Building and Loan Associations (3d Ed.), §4. The interests of those who may be affected seem amply safeguarded by provisions for judicial inquiry. Sections 10, 12, 15 and 18 of article VIII of the Building and Loan Code (S. L. 1933, pages 341, 342, 344 and 350, respectively) apparently supply all reasonably proper means of obtaining speedy judicial hearings on all vital issues that could properly be raised. Section 18, for instance, expressly says: ''Nothing in this Act shall be construed to prevent an Association or person affected by any order, ruling, proceeding, act or action of the Commissioner or any person acting in his behalf and at his instance, from testing the validity of the same in any Court of Competent Jurisdiction, thru injunction, appeal, error, or other proper process or proceeding, mandatory or otherwise.'' However, only those objections which the associations are entitled to raise can be considered in the case at bar.

The constitutionality of a statute is presumed, especially where the law has been enacted in the exercise of the police power, and its unconstitutionality must be proved beyond a reasonable doubt. See *Cavanaugh v. People, supra,* at page 296, and cases there cited.

In view of what we have said above, we are convinced that the trial court, in sustaining the right of the com-

300

missioner to demand and take possession of the associations, committed no error and that its judgment ought to be affirmed.

Judgment affirmed.

Mr. Justice Campbell not participating.