## No. 15,642.

CHAMPLIN REFINING COMPANY *v.* CRUSE, DIRECTOR OF
REVENUE.
(173 P. [2d] 213)

Decided September 23, 1946.

Mr. ARTHUR A. BROOKS, JR., Mr. NATHAN SCARITT, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. GEORGE K. THOMAS, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THIS case involves section 2 of the Colorado motor fuel excise tax statute. S.L. '33, page 715, as amended by chapter 170, S.L. '35—being section 382, chapter 16, '35 C.S.A. Plaintiff in error, plaintiff below, paid, under protest, $270.64 which the department of revenue determined to be due for the period January 1941 to March 1943, inclusive. Plaintiff took the position that, as a Colorado distributor purchasing gasoline from a company owning a bulk plant at Kerrick, Oklahoma, it was entitled under the law to a deduction of two per cent for shrinkage. Following an adverse determination by the revenue department, plaintiff brought suit to recover the amount of the tax paid and, after adverse judgment in the trial court, comes here seeking reversal.

That portion of the above mentioned section of the act here involved reads as follows:

"(a)  An excise tax of four cents (4c) per gallon or fraction thereof is hereby imposed and shall be collected on all motor fuel sold, offered for sale or used in this state for any purpose whatsoever; provided, however, that upon the same motor fuel only one (1) tax of four cents (4c) per gallon or fraction thereof shall be paid in this state, for which tax the distributor first receiving the motor fuel in this state after it has left the refinery of its origin or tank farm at or appurtenant to such refinery either without or within this state, shall be primarily liable. Said tax shall be computed upon and measured by the total amount of motor fuel received by each distributor in this state and paid in the manner hereinafter provided; the amount received, in the case of motor fuel shipped to a distributor from a refinery, to be deemed the amount shipped from the refinery, as shown by the refinery invoice; provided, that an allowance of two per cent (2%) of the total amount received, as shown by such refinery invoices, during each calendar month, shall be made and deducted by the distributor to cover his losses in transit and in unloading such motor fuel. * * *

"(b)  Every person who shall use in this state for propelling a motor vehicle on the public streets or highways, or import into this state for use or sale in this state any motor fuel on which a licensed distributor has not paid or is not liable for the tax hereinbefore imposed, shall be liable for and shall pay to the state treasurer an excise tax of four (4) cents per gallon or fraction thereof upon all such motor fuel so used or imported for use or sale in this state, on or before the twenty-fifth (25th) day of the calendar month following the month in which such motor fuel was used or imported, and shall render at the time of the payment of such tax an itemized statement under oath to the state treasurer, on forms provided by said treasurer, of

all such motor fuel so used or imported during the calendar month in question. * * *"

Plaintiff specifies that the trial court erred: "1. In holding that the refusal of the statutory two per cent allowance on gasoline received from a bulk plant was lawful and was not contrary to the intention of the legislature in Section 382, Chap. 16, 1935 Colorado Statutes Annotated, Vol. 2; or was lawful and not contrary to the terms and provisions of said section. 2. In ignoring that if said section of the Colorado Motor Fuel Tax law does not provide for said allowance, it is invalid as being class legislation in violation of Section 25, Article V of the Colorado Constitution. 3. In ignoring that if said section of the Colorado Motor Fuel Tax law does not provide for said allowance it deprives the plaintiff of its property without due process of law, and denies the plaintiff the equal protection of the law in conflict with the XIVth Amendment to the Constitution of the United States. 4. In ignoring the well established proposition that where two constructions are available, one of which would place the statute without constitutional provisions, and the other within such provisions, the latter will be given."

It is apparent that the effect of the interpretation of the above quoted statute by the director of revenue and the trial court is to levy the tax on all motor fuel coming into the hands of the distributor who first receives it in Colorado, but to grant the two per cent allowance to cover losses in transit and in unloading such motor fuel caused by evaporation and spillage only on that motor fuel which has been received from a refinery. The undisputed evidence showed that there is little difference between the oil tanks containing the gasoline at a tank farm appurtenant to a refinery and the tanks containing the gasoline at a bulk station, such as the one from which plaintiff's product was shipped, except that, generally speaking, the tanks at a bulk station may be smaller than those at a tank farm appurtenant to a re-

finery. The evidence further showed that there was no essential difference in the amount of loss of fuel, whether it came from a refinery or a bulk station.

Counsel for both parties agree that the intent of the legislature in passing the act was to tax all gasoline coming into the hands of the distributor first receiving the motor fuel in this state; but counsel for plaintiff argue, and we believe with some justification, that if this broad construction is to be adopted concerning the primary liability for the tax, a similar construction should be followed in granting the two per cent allowance to cover losses in transit and unloading.

■■ To adopt the construction of the statute by the trial court and director of revenue would seem to discriminate in favor of a company powerful and wealthy enough to own and operate a refinery, and against the company not possessed of one. Such an interpretation would appear to violate the equal protection clause in the Fourteenth Amendment to the federal Constitution. "Equal protection in its guaranty of like treatment to all similarly situated permits classification which is reasonable and not arbitrary and which is based upon substantial differences having a reasonable relation to the objects or persons dealt with and to the public purpose sought to be achieved by the legislation involved." 12 Am. Jur., p. 131, §469. "In all cases, however, where a classification is made for the purpose of conferring a special privilege on a class, there must be some good and valid reason why that particular class should alone be the recipient of the benefit." 12 Am. Jur., p. 227, §530. In the instant case no reason appears in the record for the special privilege conferred upon shipments of motor fuel received from a refinery, and the trial judge in rendering judgment recognized this fact when he said: "There is no question but what Mr. Cruse's rules and regulations, drawn up as interpreting and applying to the enforcement of this particular statute, are in strict accordance with the reading of the statute itself. As to

the fairness or the reasonableness of it, it is hard to understand why the law should have been worded in that way. It is hard to understand why, just because gasoline happens to come from tanks on a tank farm adjacent to a refinery, it should be under any different rule as to privileges or liabilities or taxes, from that coming from some place that just does a general business in accumulating petroleum products in tanks at a certain spot and then shipping it from that." In *Zeigler v. People,* 109 Colo. 252, 124 P. (2d) 593, we approved the following rule laid down in *Consumers' League v. Colorado & S. Ry. Co.,* 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914 A, 1158, that, "In cases involving the equal protection clause of the Constitution, the fundamental principle involved in classification is that it shall meet the requirement that it must affect alike all persons in the same class and under similar conditions."

We believe also that the interpretation of the act adopted by the director of revenue and the trial court would violate section 25, article V of the Colorado Constitution forbidding special legislation and more particularly that clause which reads, "In all other cases, where a general law can be made applicable, no special law shall be enacted." This particular point was not raised before the trial court and, under ordinary circumstances, might properly be disregarded here. When, as in the instant case, we are asked to interpret a statute in such a way as to violate the Colorado Constitution, we necessarily must, in arriving at a proper construction of the act, observe and give effect to all relevant provisions of our fundamental law. We therefore apply the well-known rule that an act should be upheld as constitutional if possible, and that if one construction would violate both federal and state Constitutions and another interpretation would be consonant therewith, the latter should be adopted; therefore, we hold that the two per cent allowance for shrinkage should have been granted to plaintiff in the instant case.

■ The Attorney General cites *Bedford, State Treasurer v. Hartman Bros., Inc.,* 104 Colo. 190, 89 P. (2d) 584, wherein we said that, "As a general rule any doubt concerning the meaning of a taxing statute must be resolved in favor of the taxpayer; but if the latter claims an exemption under the act the burden is on him to establish clearly his right to it. 61 C.J. 391." We do not believe, however, that the two per cent allowance for shrinkage, for which provision is made in the motor fuel tax act, comes under the classification of exemptions contemplated by the rule. This allowance is a component part of the section which provides for levying the tax, and is not set forth in a separate pargarph, or even in a separate sentence, as it might be expected an exemption would be written; furthermore, this two per cent allowance is not called an exemption, and, in fact, is not one; for it relieves no person or corporation from the incidence of the tax.

The Attorney General also argues that to adopt the interpretation of the statute advanced by plaintiff would result in the granting of three allowances of two per cent each, namely: on the gallonage from the refinery to the bulk station, from the bulk station to the filling station, and finally from the filling station to the customer. We do not believe that this contention is tenable, because of the fact that the act itself provides specifically that there shall be but one tax, and this solely on the distributor first receiving the motor fuel in this state. The two per cent allowance for shrinkage applies solely to this one tax.

We have carefully read and considered the following cases cited by the Attorney General upholding the constitutionality of previous motor fuel acts in this state: *Altitude Oil Co. v. People,* 70 Colo. 452, 202 Pac. 180; *People v. Denver,* 84 Colo. 576, 272 Pac. 629; *Miller v. People,* 76 Colo. 157, 230 Pac. 603; *People v. Texas Co.,* 85 Colo. 289, 275 Pac. 896. In none of these cases do we discuss the point here involved. We do not believe any of them

are applicable, except that in the Altitude Oil Company case it might be inferred that we would reach the conclusion adopted in this case had the point been raised, for there we specifically say: "It [the tax] applies impartially to dealers throughout the whole state."

The judgment accordingly is reversed.