THE UNITED TEXTILE WORKERS OF AMERICA *et al. vs.* LISTER WORSTED COMPANY, INC.

MAY 9, 1960.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

16

POWERS, J.   This action of the case in assumpsit was brought for the benefit of 214 named employees of the defendant, pursuant to the provisions of general laws 1956, chapter 28-8, to recover certain moneys allegedly owed to said employees by virtue of the terms of a collective bargaining agreement.   The case was tried before a superior court justice sitting without a jury and resulted in a decision for the defendant for costs.   It is before us on the plaintiffs' bill of exceptions, the only exception pressed being to the decision.

The declaration is in three counts and alleges that on August 22, 1950 plaintiffs, defendant, and the employees of the latter, all members of Local No. 35 of The United Textile Workers of America, entered into a collective bargaining agreement; that under the terms thereof defendant agreed to recognize plaintiffs as bargaining agents; that the agreement would run  continuously unless, not later than sixty days prior to February 1, 1952, or prior to February 1 every year thereafter, notice in writing was given by either party to the other that the contract was to be terminated; that the contract was in full force and effect through 1953 and by an express agreement made in December of that year was extended to February 1, 1955; and that defendant failed to pay its employees for one of the two weeks' vacation period and for four holidays in 1953, and failed to pay the two weeks' vacation period and the January 1 holiday occurring in 1954.

The defendant pleaded the general issue.

The record discloses that it was agreed by stipulation that all the employees named in the declaration had fulfilled the necessary requirements as to hours and duration of employment set forth in the collective bargaining agree-

ment and were entitled to recover the amounts placed opposite their respective names in a schedule admitted by stipulation in the event that the court should render a decision for plaintiffs.

It further appears that on December 1, 1952 the union sent a written notice to defendant of its desire to discuss modification of the contract; that in December several conferences were held, during which period defendant wrote the union on December 11 relating to proposed modifications and the latter replied by letter dated December 23, 1952; that on April 27, 1953 the union wrote to defendant referring to a letter dated April 21 received from the latter indicating discussions were continuing in the same vein; that on November 17, 1953 defendant sent a written notice to the local union of its intention to terminate the 1950 contract as of February 1, 1954 and expressing its willingness to negotiate a new contract; and that on March 30, 1954 the union wrote to defendant on the subject of previous discussions. Thereafter, on July 2, 1954, the union representative wrote to defendant notifying it that the members had voted to reject its suggestion proposing a reduction in wages, and reminding defendant of the vacation and holiday compensation still owing to its employees. This communication purported further to remind defendant that no new agreement had been signed, and that the union had waived none of its rights under the 1950 contract which it claimed was still in effect by extension. All of these communications were placed in the record as exhibits, with the exception of the April 21, 1953 letter, to which only reference is made.

Considerable testimony was given by the officers of the local union and by Frank Sgambato, international vice-president and bargaining agent for said union, the membership of which consisted exclusively of defendant's employees, to the effect that they never gave notice of termination to defendant; that numerous conferences were held

in a spirit of cooperation; that the benefits sought in the present suit were never waived; and that despite the termination notice from defendant, effective February 1, 1954, the employees continued to work under an oral extension of the 1950 agreement pending adoption of a new agreement.

William H. Lister, Jr., general manager of the defendant corporation, testified that he signed the August 22, 1950 collective bargaining agreement on behalf of his company; that he continued to serve as general manager throughout the relevant period; that from November 1953 to May 1954 numerous discussions were held with the union representatives; that from February 1, 1954 until the mill was shut down in July of that year the company continued to check off the union dues; and that during the spring of 1954 the discussions related to the terms of a new contract, but the parties did not enter into a new written contract. It was the tenor of his testimony that the union's letter of December 1, 1952 terminated the contract as of February 1, 1953, and he repeatedly denied that there had been any oral extension thereof.

Nancy Scrogey testified that she had been a member of the local union since 1943; that from January 1953 until the plant closed in 1954 she was recording secretary and a member of the general conference committee; that pursuant to a notice posted in the plant a meeting of the local union was called for June 27, 1954 to discuss plaintiffs' claims against defendant; that the names of the members present were not taken, but that a substantial percentage of the membership attended; that she kept the minutes of the meeting; and that it was unanimously voted to authorize the union to bring suit if necessary to collect the unpaid compensation for the vacation periods and holidays in issue. Her testimony was corroborated by other members, and on plaintiffs' offer to add the cumulative testi-

mony of five other witnesses, defendant stipulated that their evidence would be corroborative.

The record appears to establish that the local union was still in existence when suit was commenced on May 17, 1955, but the testimony is conflicting as to whether such union first attempted to resort to arbitration, the witnesses for plaintiffs insisting that they advised defendant's general manager of their intention, but refrained from arbitration when the latter informed them that it would serve no purpose since defendant was unable to pay. The general manager categorically contradicted this testimony.

The trial justice dismissed the action, as he stated, "because the court in interpreting the statute, feels that it cannot pass upon the question raised on the merits as to whether or not the employees were or were not entitled to vacation pay and holiday pay under the provisions of the collective bargaining contract, or whether or not the collective bargaining contract was or was not in existence for the period for which the union seeks to recover benefits for its employees, for the sole reason, if the court did pass upon that question, it would not be binding upon the 214 employees, whom the court feels are not properly before the court; since the court cannot bind the employees, the court could not pass upon that question and bind the defendant corporation." In his opinion, G. L. 1956, chap. 28-8, required the affirmative consent of each employee before the authority of the statute could be invoked by the union in the instant case.

The provisions of the chapter in question read as follows:

"28-8-1. Capacity to sue on behalf of employees for contract violation.—Suits or actions at law for the violation by an employer of contracts of employment between such employer and his employees, who are represented by a labor union as their legally constituted bargaining agent, and whose rights and duties as such employees are set forth in a collective bargaining agreement between such employer and labor union, as the

legal representative of such employees, may be brought in the name of the union for the benefit of such employees. This section shall apply to any such violation heretofore made or which may be made in the future by such employer, provided that any action at law brought by such labor union for the benefit of such employees shall be subject to the provisions of §§9-1-15 to 9-1-24, inclusive.

"28-8-2. Suit in superior court.—Such labor organization may sue as a legal entity for the benefit and on behalf of the employees, whom it represents as aforesaid, in the superior court of the state of Rhode Island, having jurisdiction of the parties.

"28-8-3. Remedy cumulative. — This chapter shall not be in substitution of any remedies which are now available in law or equity, to such employer or employee, but shall be cumulative thereto."

The plaintiffs contend that the trial justice erred, and their position is embraced within three principal arguments.

They argue that the language of the statute is clear and unambiguous and that if the legislature had intended to make prior consent a condition precedent to suit by the union on behalf of its members it would have expressly so provided. We are in accord with their contention that the statute is not ambiguous, but we do not agree that since the legislature did not expressly require consent it must be inferred that they did not intend it.

The trial justice concluded that the phraseology in §28-8-1, "Suits or actions at law * * * may be brought * * *," coupled with the provision in §28-8-3, that the remedy was not in substitution of the employees' right to sue but was expressly "cumulative thereto," clearly indicates that the purpose of the legislation was to authorize the right of the union to sue for the enforcement of the rights of its individual members in their capacity as employees, provided it had prior permission so to do. He recognized that the suit was not a true class action whereby the union would be suing for the violation of a contractual obligation owed

to its members as such and not as employees. We are of the opinion that the trial justice did not err in this regard. It was not the intention of the legislature to preclude the right of an individual employee to waive or ignore the violation of a contractual obligation to which only he and his employer are privy. This right of forbearance would be lost to the employee if the union could bring suit without his consent.

However, plaintiffs further contend that assuming arguendo that consent is a prerequisite to the bringing of suit, prior consent was inherent in the vote of the local union members at the meeting of June 27, 1954 by which vote a resolution was adopted directing and empowering the union to sue for the recovery of the vacation and holiday compensation which plaintiffs claim is owed to those for whom they sue. The trial justice held in effect that the adoption of the resolution did not constitute consent by those not present, and since the minutes failed to show which of the 214 members were present and voting there was nothing in the record before him from which he could find that consent had been given.

We are of the opinion that the trial justice did not err in holding that the adoption of the resolution on which plaintiffs rely did not constitute consent by those not participating. It is the contractual relationship between each employee and the defendant employer that is in issue, and not some right held in common as members of the union which thus might be determined by a majority vote at a union meeting.

Nor is there any merit in plaintiffs' contention that the trial justice erred in deciding inferentially that the statute was unconstitutional in that it was a denial of due process to the individual employee. They concede that he expressly held the statute to be constitutional, but argue that his reasons for dismissing the action go to the constitutionality of the chapter in question. They misconceive the import

of the remarks made by the trial justice in reaching his decision. It is clear from a reading thereof that in his opinion the constitutionality of the act would be open to question if it were construed as not requiring prior consent, and he was applying a well-established canon of construction that when considering an act of the legislature every reasonable construction must be given to preserve its constitutionality.

We need not consider whether the opinion of the trial justice regarding the constitutionality of §28-8-1 has merit since we are in accord with his decision that to maintain this action it is incumbent upon plaintiffs to show that they had been expressly authorized to do so by the persons for whose benefit they sue. The plaintiffs argue that he was without authority to discuss the constitutionality of the act, since the question had not been raised by either party to the suit and they cite *Ravenelle* v. *City of Woonsocket,* 73 R. I. 270, *Haigh* v. *State Board of Hairdressing,* 74 R. I. 106, and *American Textile Co.* v. *DeAngelo,* 83 R. I. 234. These cases are definitive of the manner in which this court and the superior court will consider the constitutionality of an act of the legislature when raised by the parties to a cause, but they do not restrict the court's initiative.

We are of the opinion that the trial justice did not err on the question of law presented here, but that he did overlook the rights of those employees who testified and those present at the trial for whom it was stipulated that their testimony would be corroborative. It cannot be said that the litigation was initiated without the consent of Elsie Corrente, Corinne LaBoissoniere, Susie Masso, Anna Murphy, Mary O'Keefe, Nancy Scrogey, Charles A. Sullivan, Leona Sullivan, and Marie Volpe.

The plaintiffs' exception to the decision is sustained as to the aforementioned employees but otherwise is overruled,

24

and the case is remitted to the superior court for further proceedings in accordance with this opinion.

*Charles A. Curran, Leonard Decof,* for plaintiffs.

*Morrissey & Conley, Joseph L. Breen,* for defendant.