No. 19,796.

In re Senate Bill No. 95 of the Forty-third General Assembly of the State of Colorado.

(361 P. [2d] 350)

Decided April 21, 1961.

The following members of the bar appeared as *Amici*

*Curiae:* Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. RICHARD A. ZARLENGO, Assistant, Mr. FRED M. WINNER, Mr. DONALD E. KELLEY, Mr. LEONARD CAMPBELL, Mr. GEORGE L. CREAMER, Mr. WILLIAM B. NAUGLE, Mr. FREDERICK P. CRANSTON, Mr. L. JAMES ARTHUR, Mr. RICHARD D. DITTEMORE, Mr. RICHARD H. SIMON.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

ON March 27, 1961, there were filed in this cause certain interrogatories propounded by the Governor of the State of Colorado under Section 3, Article VI of the constitution, which requires the court to "give its opinion upon important questions upon solemn occasions when required by the Governor." Counsel appearing as amicus curiae at our invitation have rendered a valuable service to the court, filing their briefs within the short time fixed by the necessity for prompt action. Oral argument was had on April 14, 1961.

The following are the pertinent portions of the communication from the Governor:

"WHEREAS, Senate Bill No. 95, entitled 'AN ACT CONCERNING DISSOLUTION AND ANNEXATION OF CERTAIN TOWNS OR CITIES' has been passed by both houses of the Forty-third General Assembly during its first regular session and has been presented to me in due course for my approval or disapproval as Governor; and

"WHEREAS, Senate Bill No. 95 provides as follows:

" 'SECTION 1. Article 10 of chapter 139, Colorado Revised Statutes 1953, is hereby amended by adding a NEW SECTION to read:

" '139-10-14. Whenever any town existing under the general laws of this state contains less than six hundred and forty acres in area and shall have been surrounded

for a period of not less than five years by a city or city and county, the territory included within such surrounded town shall become a part of the surrounding city or city and county and such surrounded town may be annexed to and become a part of the surrounding city or city and county by appropriate ordinance passed by the city council of the annexing city or city and county without complying with any of the other provisions of this article. Annexation shall be complete on the effective date of the annexation ordinance for all purposes except that of general taxation in which respect annexation shall not become effective until on and after the first day of January, next ensuing. Upon the effective date of such annexation ordinance, such surrounded town shall be dissolved, all of its property shall become the property of the annexing city or city and county, which city or city and county shall assume and pay all outstanding bonds, obligations and indebtedness of the town annexed, and all bonds, obligations and existing indebtedness of any special improvement district, water district, sanitation district, park district or park and recreation district located entirely within the boundaries of said annexed town, and a proportionate share of any of said type of bonds, obligations or indebtedness of any of said districts larger in area than said town, in direct proportion as the valuation within said town bears to the total valuation of any said district involved.

" 'SECTION 2. *Constitutionality clause.* If any provisions of this act, or the application thereof to any person or circumstances, is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared to be severable.

" 'SECTION 3. Repealing clause. The provisions of this act are hereby specifically repealed on and after July 1, 1962.

" 'SECTION 4. Safety clause. The general assembly

hereby finds, determines, and declares that this act is necessary for the immediate preservation of the public peace, health and safety.' and

"WHEREAS, the Constitution of the State of Colorado contains the following provisions:

"Article V Section 25:

" 'Special legislation prohibited. — The general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * In all other cases, where a general law can be made applicable, no special law shall be enacted.'

*"Article XIV Section 13:*

" 'Classification of cities and towns. — The general assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the powers of each class shall be defined by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions.' and

"WHEREAS, the advice of the Attorney General has been sought and received and there is grave doubt as to the constitutionality of Senate Bill 95 under the provisions of our Constitution hereinabove set forth; and

"WHEREAS, Senate Bill No. 95 would affect the powers, functions and existence of certain municipal corporations; and

"WHEREAS, the power of the General Assembly to pass said Bill is seriously questioned; and

"WHEREAS, the provisions of Senate Bill No. 95 would have far reaching effect on the rights of our citizens and is of vital concern to municipal corporations affected thereby; and

"WHEREAS, it appears to me that such matters are of extreme importance and of great public interest; and

"WHEREAS, under Article IV, Section 11 of our Constitution any disapproval by me of the Bill must be

made within ten days after its presentment to me on March 25, 1961, unless the General Assembly should by its adjournment prevent its return in which case any disapproval by me of the Bill must be made within thirty days after the sine die adjournment of the General Assembly.

"NOW THEREFORE, in view of the premises, I, Stephen L. R. McNichols, as Governor of the State of Colorado, respectfully submit that questions of constitutionality of Senate Bill No. 95 are important and that a solemn occasion within the meaning and intention of Section 3 Article VI of the Constitution of the State of Colorado has arisen and I accordingly request this Honorable Court to render its opinion upon the following questions, viz:

"1. Would Senate Bill No. 95 be a local or special law in violation of Article V Section 25 of our Constitution?

"2. Would Senate Bill No. 95 be in violation of Article XIV Section 13 of our Constitution requiring that the powers of each class of cities and towns be defined by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions?

"Respectfully submitted

/s/ "STEPHEN L. R. McNICHOLS

"Governor, State of Colorado."

Since there is no constitutional requirement that extended reasons be given in answering questions submitted by the Governor, we deem it advisable in the interest of expedition to be brief. We further conclude that if the Senate Bill in question violates any or either of the constitutional provisions mentioned by the Governor, no good purpose would be served in determining whether it offends against other sections of the constitution.

We accordingly address ourselves to the interrogatory No. 1 above.

Question to be Determined.

*Would Senate Bill No. 95 be a local or special law in violation of Article V Section 25 of the Constitution?*

■ The question is answered in the affirmative. There is a general law presently in force dealing with the subject of annexation of towns or cities to special charter cities. It is C.R.S. '53, 139-10-1, et seq. Under this statute the annexation must be accomplished by joint concurrence of the annexing special charter city and the annexed city or town, as expressed by the affirmative vote of the qualified voters of the city or town to be annexed.

Senate Bill No. 95 has had a stormy and very public legislative history. As judges we may not close our eyes to facts which as men we conclusively know to be true, which we would have to do if we pretended to be unaware of the fact that this legislation was known to every member of the legislature and to every other interested person as "The Glendale Bill." We would be blind to stark reality indeed if we assumed the possibility of any other geographical areas in Colorado to which it would apply, save and except the city of Denver and the town of Glendale.

Under procedures decreed by the existing law, 139-10-1 et seq., Glendale has twice refused by election to be annexed. To say that this court cannot take judicial notice of these matters of public record and common knowledge is most unrealistic.

The special nature of the bill is shown conclusively by the following facts:

1. As originally drawn, the bill related to "towns and cities" less than 640 acres, and surrounded for a 5-year period. It was amended, to strike its application to cities, and as enacted relates to towns only. There is no conceivable reason for differentiation to be made between a 640-acre surrounded town and a 640-acre surrounded city, or why an amendment to Article 10, chapter 139,

which article and chapter relate to both towns and cities, should be restricted to towns only.

2. As originally drawn, the bill was unrestricted as to time. As amended and passed, there was attached a Section 3, specifically repealing the bill on and after July 1, 1962. Therefore, it is made absolutely certain that the bill can apply only to a town now in existence and meeting the very special requirements of being less than 640 acres in extent and being completely surrounded by a special charter town or city. The bill cannot operate prospectively because it is impossible that before July 1, 1962, any circumstance can occur to allow another town to be surrounded for five years by a special charter town or city.

Having twice attempted, without success, to annex Glendale under provision of the existing law, those advocating annexation (no doubt with the best of motives) seek by the proposal in question to accomplish by compulsion, powered by this special act, that which they have been unable to accomplish by application of the general law upon the subject.

This is exactly what the constitution forbids in plain language. Senate Bill No. 95 was unquestionably conceived, cut, tailored and amended to accomplish a particular purpose with reference to a particular area, to-wit, Glendale. Once having accomplished that particular purpose the act would die before it could possibly accomplish a like purpose in any other place. The thin veneer of language used to "get around" the constitutional prohibition, and to give the measure a mask of general application, falls from the face of the bill when considered in the light of common knowledge of which we may take judicial notice. *In Re Extension of Boundaries of the City of Denver,* 18 Colo. 288, 32 Pac. 615; *In Re Constitutionality of Senate Bill No. 293,* 21 Colo. 38, 39 Pac. 522; *The City of Denver, et al. v. Coulehan,* 20 Colo. 471, 39 Pac. 425.

The limitations upon the power entrusted to those in

positions of authority cannot be brushed aside as having no application to projects or enterprises considered by those in official positions, as desirable or necessary to serve a special and local purpose. We need but to go to the landmark case of *Marbury v. Madison*, 1 Cranch, 137, where we find the following:

"To what purpose are powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained? The distinction between a government with limited and unlimited powers is abolished, if those limits do not confine the persons on whom they are imposed. * * * "

For the foregoing reasons, we answer the first question in the affirmative.

MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS dissent and each would answer the interrogatories in the negative.