No. 19,812.

The Mountain States Telephone and Telegraph
Company *v.* Animas Mosquito Control District.

(380 P. [2d] 560)

Decided April 8, 1963.

Messrs. AKOLT, TURNQUIST, SHEPHERD and DICK, Miss PAULINE J. NELSON, for plaintiff in error.

Messrs. EMIGH and EMIGH, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

WE refer to the plaintiff in error as the telephone company and to the defendant in error as the district.

On September 28, 1960, the trial court entered an order creating the district pursuant to authority granted by C.R.S. '53, 89-3 (1947 Act), which sanctions the organization of water districts, sewage disposal and sanitation districts, police protection districts, safety protec-

tion districts, and metropolitan districts, the latter designed to afford the benefits of two or more of the above mentioned purposes.

In 1959 the legislature amended the 1947 act by adding to the above mentioned purposes for which such districts may be formed the following: "(b) A mosquito control district, which is one to provide for the elimination of mosquitoes. (c) A street improvement district * * * ." 1960 Perm. Supp., C.R.S. '53, 89-3-2.

Within the boundaries of the district created, the telephone company owned part of Lot 5 and all of Lots 6 and 7, Block 71, City of Durango, on which is located the telephone building used in the operations of its business; also owned by it within the boundaries of the district are easements, poles, lines, equipment, and other facilities necessary to the conduct of its business, all constituting its operating properties within the district. The lots in question have an area much less than twenty acres.

The Colorado Tax Commission placed a value of $444,739.00 for tax assessment purposes on *all of the operating properties* of the telephone company within the boundaries of the district.

On October 17, 1960, the telephone company filed its petition in the proceedings creating the district, requesting the trial court to decree that the telephone company property located in the district is not a part of and not included within the district.

The telephone company relies upon C.R.S. '53, 89-3-3, which outlines what boundaries may be used in forming a district, and provides among other things that:

"A district may consist of noncontiguous tracts or parcels of property but no single tract or parcel of land containing more than twenty acres *of* which, together with the buildings, improvements, machinery and equipment thereon situate shall have an assessed valuation in excess of twenty-five thousand dollars at the date of filing the petition mentioned in section 89-3-5 may be

included in any district organized under this article without written consent of the fee owners thereof filed in the district court in which the proceedings are then pending." (Emphasis supplied.)

The company alleges that its property within the district (real estate, easements, poles, wires, equipment, etc.): " * * * is assessed pursuant to law as a *single parcel of property,* and * * * had [has] an assessed value of * * * ($444,739.00) * * *." and further alleges that it has not consented to the inclusion of said property in the district.

At the trial it was established that all of the property of the telephone company located within the outer boundaries of the district was valued for tax purposes at $444,739.00, said value being arrived at by complicated procedures provided by C.R.S. '53, 137-4-1 and 2.

In assessing the property for tax purposes no separate value is placed on any real property, improvements thereon, personal property, or any specific item of property.

The district filed no responsive pleading, but did appear by counsel and resisted the efforts of the telephone company to obtain an order decreeing that its property is not a part of or included within the district.

The telephone company produced testimony and exhibits with reference to its properties and the method of assessment, and also produced exhibits which dealt with the legislative history of the act, said exhibits being offered to show that the word "of" above noted was intended to be "or."

At the close of the testimony findings and judgment were entered denying the telephone company's petition. The trial court held in substance that the legislature intended to use the word "or" rather than "of" and further, that the evidence did not establish that the telephone company's property within the district constituted a "single tract or parcel of land" having an assessed valuation of over $25,000.00.

The telephone company is here by writ of error seeking reversal, contending that its property comes within the exclusion provisions of 89-3-3.

In the trial court neither party presented for consideration, nor did the trial court consider, the question of the constitutionality of 89-3-3, which provides for the exclusion, or, more accurately stated, non-inclusion, of single tracts in excess of twenty acres or single tracts having an assessed valuation in excess of twenty-five thousand dollars.

Neither party presented the question here in briefs or oral arguments.

After hearing oral arguments and considering the problem involved, this court entertained grave doubts as to the constitutionality of 89-3-3, and directed the parties to furnish additional briefs and oral arguments on the question of the constitutionality of 89-3-3, and also the question of whether the balance of the act may survive if 89-3-3 be held unconstitutional. Such briefs were filed and arguments had.

Counsel for all parties urge that courts should consider only questions presented and the constitutionality of an act should be considered only at the instance of an aggrieved party.

Though generally it is not considered good practice for courts to resolve cases on grounds not urged by the parties or their counsel, yet in cases such as we have before us, when much of the argument revolves around which of two words and meanings the legislature intended, and which by either interpretation reveals legislation that is patently unconstitutional and void, and under which many persons are receiving unfair, discriminatory and unlawful treatment, it is the duty of the courts to resolve the question to the end that citizens may not be deprived of their constitutional rights. To ignore the question of constitutionality would be to permit the perpetration of the mischief spawned by this invalid provision for exclusion.

 In 16 C.J.S., Constitutional Law, §96, pages 331, 333, in discussing the propriety of courts passing on the constitutionality of legislation in cases where the parties do not raise the question, we find the following language:

"As a general rule, a court will not inquire into the constitutionality of a statute on its own motion; only those constitutional questions which are duly raised and insisted on, and are adequately argued, will be considered. * * * ."

"This is not an inflexible rule, however, and in some instances constitutional questions inherently involved in the determination of the cause may be considered even though they may not have been raised as required by orderly procedure. * * * ."

Courts in many jurisdictions, including Colorado, have held that under circumstances such as we have here, it is proper for the court *sua sponte* or on motion of a person not aggrieved to pass on the constitutionality of a statute.

In *Houston Lighting and Power Co. v. Jenkins* (Tex.), 5 S.W. (2d) 1030, the court said:

"With reference to our duty to raise and consider the constitutionality of the statute involved without its unconstitutionality having been pleaded, and without assignment of error, the rule seems to be settled that where a statute is absolutely void — void as to all persons and for all purposes — and the record shows that such statute furnishes the only basis for the right asserted by one party to the suit and the judgment, and necessarily invades the right of the other party against whom judgment was rendered under provision of the void statute, such a statute must be considered as never having been enacted, and the judgment based thereon is absolutely void, and under such circumstances the question is one of fundamental error apparent of record and of which an appellate court must take cognizance without the constitutionality of the statute having been pleaded and

without assignment of error. Gulf Refining Co. v. Bonin (Tex. Civ. App.) 242 S. W. 779."

In *Townsend v. Beck,* 140 Fla. 553, 192 So. 390, it is said:

"It is true that the question of the constitutionality of the statute, supra, was not presented in the court below, but as the complainant in the court below could not have the relief sought, except under the provisions of that statute, equity should not grant such relief, if the statute is clearly unconstitutional, and, therefore, void."

In *United Textile Workers of America v. Lister Wor-Sted Co.,* 91 R. I. 15, 160 A. (2d) 358, it is said:

" * * * These cases [referred to in the opinion] are definitive of the manner in which this court and the superior court will consider the constitutionality of an act of the legislature when raised by the parties to a cause, *but they do not restrict the court's initiative.*" (Emphasis supplied.)

In *Algee v. State,* 200 Tenn. 127, 290 S. W. (2d) 869, it is said:

" * * * Under the suit as brought, as above set forth, the question of the constitutionality of this Act may be looked to by the Court if necessary without specifically pleading in the bill that the Act was unconstitutional.

" * * * If we are satisfied of the correctness of the holding of the lower court it is our duty to affirm even though we affirm on another ground."

In *State v. Spears,* 358 Mo. 23, 213 S.W. (2d) 210, the court said:

" * * * Here, the constitutional question was not within the purview of the petition filed in the circuit court in the injunction suit, but could have been raised as a part of the cause of action. And it was relators' duty to do so at the first opportunity, and keep the question alive. * * *.

\* \* \*

"On the other hand, the public interest sometimes calls for an opposite conclusion, and we may decide

constitutional questions even ex mero motu where matters of public concern are involved. Here, they were not raised in the prior circuit court case and it was not a class action. The statute is new, and the respondent judges need guidance. Whether they do or do not enforce the statute they may be subjected to a multiplicity of suits — the very thing sought to be avoided in the Powell case. Both sides have agreed to a prompt submission of the cause, and under the Conran case just cited we feel that in the public interest we should decide the constitutional question."

In *Remine v. Knox County,* 182 Tenn. 680, 189 S.W. (2d) 811, it is said:

"Learned counsel for Remine raise first the procedural question that the demurrer before the chancellor does not present the issue of constitutionality of this private act and that the chancellor was therefore without authority to pass thereon.

\* \* \*

"Second, it was within the inherent power of the chancellor to deny the relief sought upon his own motion when it appeared to him that a constitutional prohibition would thereby be violated. This is the generally recognized rule, which is especially applicable when the public interest and revenues are involved."

In *Golden v. Schaul,* 105 Colo. 158, 95 P. (2d) 806, the trial judge, in a case where no party to the litigation raised the question, passed on the constitutionality of a statute affecting the rights of property owners and bondholders in a paving district. Attorneys representing bondholders in another district were permitted to appear as amici curiae and to urge that the statute was unconstitutional. The trial court so held and the plaintiffs in the trial court sought review by writ of error to this court. This court permitted the same counsel to appear as amici curiae and sustained the judgment of the trial court. Therein it is said:

"As might well be expected from the manner in which

the constitutional question under discussion was injected into the case, counsel for the city protest that the trial court had no legal authority to consider this matter and suggest on this ground that we should strike the challenged provision from the decree without further consideration. In support of this position they point out that we have held that a court should not deal with constitutional questions except when raised by some one claiming to have suffered (*United States Building & Loan Ass'n v. McClelland,* 95 Colo. 292, 36 P. [2d] 164), and that only those whose rights are affected by the enforcement of a law may question its constitutionality. *Post Printing & Pub. Co. v. Denver,* 68 Colo. 50, 189 Pac. 39. That such generally is the rule cannot be doubted and ordinarily only those who are parties to a suit may question the constitutionality of a statute involved therein. 16 C. J. S., p. 176 [now page 255], §83. Nor, as a general rule, will a court inquire into the constitutionality of a statute on its own motion. 16 C. J. S., p. 220 [now page 331], §96. 'This is not an inflexible rule, however, and in some instances constitutional questions inherently involved in the determination of the cause may be considered even though they may not have been raised as required by orderly procedure.' 16 C. J. S., p. 221 [now page 333], §96, and cases cited in footnote 24. *The soundness of the exception is obvious when it is considered that a court should not enter a decree which is void for constitutional reasons.* This principle is recognized in the case of *New York Life Ins. Co. v. Hardison,* 199 Mass. 190, 85 N. E. 410, 127 Am. St. Rep. 478, wherein it was said that since a decree pronounced by a court without jurisdiction is void, the validity of the statute upon which the jurisdiction of the court depends may be considered upon its being brought to the attention of the court by persons interested in the effect to be given the statute, although not directly interested in the pending proceeding. See, also, 16 C.J.S., p. 176 [now page 255], §83. We cannot, therefore, say

that under the circumstances the trial court acted other than properly in considering the constitutional aspects of the decree tendered, to the end that what it believed a valid decree might enter.

"Further, as the matter comes to us, the city, a party of record, in the proceeding below, to justify the elimination of the included provision of the decree is placed in the position of contending that as to this matter the decree tendered by it was legally proper. In this sense, the relief here sought by the plaintiff in error of necessity requires a consideration of the constitutional question advanced. Actuated by these considerations and the further circumstance that, as counsel advise, the same uncertainty is involved in proceedings relating to several other improvement districts in Jefferson county, we deem it our duty to notice the contention." (Emphasis supplied.)

Decisions of other courts making similar pronouncements are collected in 16 C.J.S., supra, note 24, page 333.

Concluding as we do, that it is proper for us to pass on the constitutionality of the act under which the telephone company predicates its right to have its property excluded from the district, we do not find it necessary or deem it profitable to inquire into the intention of the legislature in using the word "of" rather than the word "or" or possibly "and" in the exclusion language; language which the trial judge charitably described as, "unclear, ungrammatical and uncertain in meaning."

We resolve the matters presented by the telephone company's petition on constitutional grounds.

 The exemption provision, whether the word "of" or the word "or" be accepted as the legislative intent, is a flagrant violation of Article 5, Section 25 of the Constitution of the State of Colorado in that it is special legislation; and that it fails to provide for all persons "the equal protection of the laws" guaranteed by the Fourteenth Amendment to the Constitution of the United States.

Under the statute as written, a person owning a single tract of land in the district, a home, for instance, having an assessed value of $25,010.00 would be exempt from all of the burdens imposed on other property owners of the district, including the duty to pay ad valorem taxes; whereas, his next door neighbor, owning a home assessed at $24,990.00, would have to shoulder the increased burdens imposed by the district resulting from the exclusion of the property of his neighbor from the payment of such taxes.

Likewise, a person owning a 20.1 acre tract would be exempt, whereas his neighbor, owning an adjacent 19.9 acre tract, would be saddled with burdens imposed by the district.

In the district involved here, created for the purpose of "the elimination of mosquitoes," neither the respective acreages owned by property owners within the district nor the assessed valuations of their respective properties bear any reasonable relation to the benefits sought to be obtained. The attempted classifications, if such they be called, are discriminatory.

In 12 Am. Jur. 151, Constitutional Law §481, it is stated:

"The general rule is well settled by unanimity of the authorities that a classification to be valid must rest upon material differences between the persons included in it and those excluded and, furthermore, must be based upon substantial distinctions. As the rule has sometimes been stated, the classification, in order to avoid the constitutional prohibition, must be founded upon pertinent and real differences, as distinguished from irrelevant and artificial ones. * * * ."

This court has on numerous occasions struck down legislation much less offensive to constitutional inhibitions than is this legislation. *Champlin Co. v. Cruse,* 115 Colo. 329, 173 P. (2d) 213; *City of Denver v. Bach,* 26 Colo. 530, 58 Pac. 1089; *In Re Eight Hour Bill,* 21

Colo. 29, 39 Pac. 328; *Allen v. Colorado Springs,* 101 Colo. 498, 75 P. (2d) 141; *In Re Interrogatories,* 146 Colo. 233, 361 P. (2d) 351.

Finding as we do, that the following provision of the act: " * * * no single tract or parcel of land containing more than twenty acres of which, together with the buildings, improvements, machinery and equipment thereon situate shall have an assessed valuation in excess of twenty-five thousand dollars at the date of filing the petition mentioned in section 89-3-5 may be included in any district organized under this article without written consent of the fee owners thereof filed in the district court in which the proceedings are then pending." is unconstitutional and void, we turn our attention to the question of whether the balance of the legislation must also fall.

In 11 Am. Jur. 834, Constitutional Law, §152, it is stated:

"It is a fundamental principle that a statute may be constitutional in one part and unconstitutional in another part and that if the invalid part is severable from the rest, the portion which is constitutional may stand while that which is unconstitutional is stricken out and rejected. * * * ."

The legislature in adopting the statute before us did not, as it often does, make a part thereof a saving clause, such as:

"If any provision of this act, or the application thereof to any person or circumstances, is held invalid, such invalidity shall not affect other provisions or applications of the act, and to this end the provisions of this act are declared severable."

Had there been such a clause, it might have been of some help in determining whether the part stricken was the inducement to adoption of the balance of the act. Without such a clause, there are other guides to be followed in resolving the question.

Section 1 of the legislation contains the following legislative declaration:

"It is hereby declared that the organization of the districts having the purposes, powers, and authority provided in this Chapter will serve a public use and will promote the health, safety, prosperity, security and general welfare of the inhabitants thereof and of the people of the State of Colorado."

The expressed purpose in creating the district before us is "for the elimination of mosquitoes."

█ Striking out the provision for the exclusion of certain properties from the district does not weaken or destroy the expressed legislative declaration nor the avowed purpose of the district; rather, it makes the legislation more logical and effective in that all of the property in the district will be subject to control and treatment. It is inconceivable that mosquitoes could be eliminated from the district with innumerable twenty-acre or $25,000 tracts immune from entry, spraying, or other treatment to prevent them from becoming breeding grounds for mosquitoes. The tax base is broadened, thus making available more funds to accomplish the desired ends.

It does not seem likely or possible that adoption by the legislature of the clause which we have found unconstitutional and stricken could have been inducement to the adoption of the balance of the act.

Surely the legislature should not be charged with making as a condition for adopting an act that there be included therein provisions for unconstitutional preference of certain property owners over others in virtually identical situations, and thus to defeat the whole purpose of the act by exempting from control and treatment various parcels of property, the control and treatment of which is absolutely essential to accomplish the avowed purpose of the act.

In *Denver v. Lynch,* 92 Colo. 102, 18 P. (2d) 907, it was held that the whole of the "Old Age Pension" law

failed because a portion thereof — found to be not severable — was declared unconstitutional. Therein are set forth guides for determining such questions.

In *Allen v. Louisiana,* 103 U. S. 80, we find the following language useful as a guide in determining the question of severability:

"It is an elementary principle that the same *statute* may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. 'But,' as was said by Chief Justice Shaw, in *Warren v. Mayor and Aldermen of Charlestown* (2 Gray (Mass.), 84), 'if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' The point to be determined in all such cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature."

In *Huntington v. Worthen,* 120 U. S. 97, the court struck down as unconstitutional that part of a taxation statute which exempted from taxation the "value of embankments, tunnels, cuts, ties, trestles, and bridges" of railroads and held that such action did not render the balance of the act invalid. The court said:

" * * * The unconstitutional part of the statute was separable from the remainder. The statute declared that, in making its statement of the value of its property, the railroad company should omit certain items; that clause being held invalid, the rest remained unaffected, and could be fully carried out. An exemption, which was

invalid, was alone taken from it. It is only when different clauses of an act are so dependent upon each other that it is evident the legislature would not have enacted one of them without the other — as when the two things provided are necessary parts of one system — that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency, the act will stand, though different parts of it are rejected."

In *Stillman v. Lynch,* 56 Utah 540, 192 Pac. 272, a provision exempting certain property from taxation was held unconstitutional and the remainder of the act held to be unaffected thereby. The court said:

"It has been suggested that it is 'a serious question as to the effect of the remainder of this statute of the claimed invalidity of such an integral part.' Without section 5869, supra, the statute provides for a complete method of taxation of banks, and it is this: The real estate is assessed at its full cash value; the stock is assessed at its full cash value, and from the assessed value of the stock the value, or, what is the same thing, the assessed value of the real estate, is subtracted, and the remainder is the amount of the assessment of all of the stock. The statute is thus not endangered. The result is the elimination of the part that is clearly repugnant to the Constitution, and that which remains is not impaired."

See, also, *Union Bank & Trust Co. v. Blan,* 229 Ala. 180, 155 So. 612.

If the telephone company, or any other owner of real property within the district, had any valid reason for exclusion of their property from the district, the act sets up adequate procedures to be followed in obtaining exclusion therefrom.

"Any time after the filing of the petition for the organization of a district and before the day fixed for the hearing thereon, the owners of any real property within the proposed district may file a petition with the court stating reasons why said property should not be

included therein, and praying that said property be excluded therefrom. Such petition shall be duly verified and shall describe the property sought to be excluded. The court shall hear said petition and all objections thereto at the time of the hearing on the petition for organization, and shall determine whether said property should be excluded or included in said district." C.R.S. '53, 89-3-8.

The procedures set up under 89-3-8 provide for exclusion of properties from the district for valid reasons rather than the arbitrary, capricious and discriminatory provisions of the offending language which we have held to be unconstitutional.

The provision of the statute under which the telephone company bases its claim for exclusion is invalid and severable; the striking down of this provision does not affect the validity of the balance of the act.

The judgment is affirmed.

MR. JUSTICE MCWILLIAMS and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE MCWILLIAMS dissenting:

The majority recognize the general rule that a court will not inquire into the constitutionality of a statute on its own motion and will not consider such unless it be duly raised and insisted upon by a proper party. But even after coming face to face with this salutary and long standing rule, the majority come to the conclusion that the instant case justifies a departure therefrom. I hold to the contrary and believe we should adhere to the general rule and under the circumstances of this case should not pass on the constitutionality of C.R.S. '53, 89-3-3.

The issue as to the constitutionality of C.R.S. '53, 89-3-3 was not raised by the disputants either here or in the trial court. Had this statute been challenged in the trial court, each party would under that circum-

stance have been afforded the opportunity to make such record in connection therewith as it desired, including the presentation of evidence, if such there be, tending to show the reasonableness and non-discriminatory character of this statute, viewed from the standpoint of its practical effect when in actual operation. By raising this constitutional issue for the first time in this Court and on our own motion, however, the majority have effectively precluded both parties from this opportunity and in so doing have elected to test the statute in a vacuum.

I am authorized to state that Mr. Justice Pringle joins in this dissent.